**Dianne REIBSTEIN, Plaintiff,**

v.

**RITE AID CORPORATION, et al., Defendants.**

**Civil Action No. 09–2734.**

United States District Court, E.D. Pennsylvania.

Jan. 18, 2011.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

Stephen G. Harvey, Raphael Cunniff, Pepper Hamilton LLP, Philadelphia, PA, for Defendant Rite Aid Corp.

Jeffrey S. Saltz, Law Office of Jeffrey S. Saltz P.C., Philadelphia, PA, Michelle C. Doolin, Leo P. Norton, Cooley LLP, San Diego, CA, for Defendant Asteres, Inc.

MEMORANDUM

EDUARDO C. ROBRENO, District
Judge.

## TABLE OF CONTENTS

I. INTRODUCTION .................................................244

II. BACKGROUND .................................................245
 A. Plaintiff's Complaint and Basis for Legal Relief ............................245
 B. The Proposed Settlement.............................................246

III. LEGAL STANDARD .................................................247
 A. Legal Standard for Class Certification ..................................247
 B. Legal Standard for Fairness .........................................248

IV. MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
 SETTLEMENT .................................................249
 A. Class Certification.................................................249
 1. Rule 23(a) .................................................249
 2. Rule 23(b) .................................................250
 B. Fairness of the Settlement .........................................251
 1. The Complexity, Expense and Likely Duration of the Litigation .........251
 2. The Reaction of the Class to the Settlement.........................252
 3. The Stage of the Proceedings and Amount of Discovery Completed.....252
 4. The Risks of Establishing Liability ..................................252
 5. The Risks of Establishing Damages .................................253
 6. The Risks of Maintaining the Class Action Through Trial ..............254
 7. The Ability of the Defendants to Withstand a Greater Judgment.........254
 8. The Range of Reasonableness of the Settlement Fund in Light of
 the Best Possible Recovery .......................................255
 9. The Range of Reasonableness of the Settlement Fund in Light of
 the Attendant Risks of Litigation ..................................256
 10. Attorneys' Fees and the Representative Plaintiff Award ................256

V. MOTION FOR ATTORNEYS' FEES .......................................257
 A. The Nature of the Court's Review .....................................258
 B. Methods to Determine Whether to Award Attorneys' Fees .................259
 C. Application .................................................260

VI. CONCLUSION .................................................261

## I. INTRODUCTION

On June 16, 2009, Plaintiff Dianne Reibstein ("Plaintiff") initiated this class action suit against Rite Aid Corp. under the Fair Credit Reporting Act (the "FCRA") as amended by the Fair and Accurate Credit Transactions Act (the "FACTA"). Thereafter, Plaintiff amended her complaint to add Asteres, Inc. as a defendant.[1] On April 28, 2010, the parties entered into a settlement agreement. The Court preliminarily approved the parties' settlement and provisionally certified the class for settlement purposes only. Plaintiff then moved for final approval of the class action settlement and for an award of attorneys' fees. On August 31, 2010, the Court held a fairness hearing pursuant to Federal Rule of Civil Procedure 23(e).

1. This memorandum refers to the two named defendants collectively as "Defendants."

After reviewing the parties' briefing and considering the arguments advanced at the hearing, the Court finds that the settlement class meets the requirements for class certification and that the proposed settlement is fair. In reaching this conclusion, the Court observes that the *Girsh/Prudential*[2] factors deemed instructive to the fairness inquiry largely miss the mark in consumer cases and may imply a fairer settlement than is warranted.

Indeed, the governing test de-emphasizes (or entirely fails to account for) the facts most probative of fairness in this case. In the Court's view, these facts include that: (1) the class is to receive an award in the form of gift cards; (2) the individual award the named plaintiff seeks is 3.75 times greater than the maximum statutory recovery of $1,000 where she acknowledges performing little work for the class; and (3) the requested attorneys' fees exceed the total recovery for the class. While some of these facts warrant close scrutiny, the Court ultimately finds the settlement to be fair. However, the Court concludes the individual award to Plaintiff is excessive and must be reduced.

Thus, as set forth more fully below, Plaintiff's motion for final approval of the class action settlement will be granted, except that the award to Plaintiff sought by way of that motion will be reduced. Plaintiff's motion for attorneys' fees will also be granted.

## II. BACKGROUND

### A. *Plaintiff's Complaint and Basis for Legal Relief*

Plaintiff's complaint alleges Defendants violated the FCRA by failing to truncate electronic receipts in accordance with the FCRA. The FCRA, as amended by the

FACTA, provides in relevant part that, as of December 4, 2006, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction." 15 U.S.C. §§ 1681c(g)(1), (3) (2010). Individuals who "willfully fail[ ] to comply" with this requirement are subject to civil liability for:

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or . . .

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability . . . the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

In 2008, however, Congress amended the damages provision to provide a limitation on a plaintiff's potential to recover for a violation. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 598 (3d Cir.2010) (Smith, J., dissenting) (outlining legislative development of the civil damages section of the FACTA). Namely, it provided that "any person who printed an expiration date on any receipt . . . between December 4, 2004, and June 3, 2008, but otherwise complied with [Section 1681c(g)'s requirements] . . . shall not be in willful noncompliance" such that liability could lie. 15 U.S.C. § 1681n(d).

Here, Plaintiff's complaint states a cognizable claim for damages because she seeks relief for a violation of the FACTA that occurred after June 3, 2008. More specifically, Plaintiff avers that Plaintiff purchased medicine by credit card at a

---

**2.** *See Krell v. Prudential Ins. Co. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283 (3d Cir.1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975).

Rite Aid location on April 5, 2009 and was given a receipt that included the card's expiration date. (Am. Compl. ¶ 23.) Plaintiff seeks to represent all individuals who were provided "receipt(s) by Defendant[s] that failed to comply with the FACTA truncation provisions" after June 3, 2008. (*Id.* ¶ 44; *see also id.* ¶ 43.)

### B. *The Proposed Settlement*

Promptly after Plaintiff filed her suit, Rite Aid "took steps to stop the practice complained of." (Pl.'s Mot. For Final Approval of Class Action Settlement, at 5.) On April 28, 2010, after a period of discovery, the parties entered into a settlement agreement. The settlement agreement provides that the settlement class should be certified as follows:

> All persons who, on or after June 3, 2008 and continuing through June 18, 2009, made a credit card or debit card purchase from the pharmacy self-service dispenser at Rite Aid store number 1320, located at 640 Montgomery Avenue, Narberth, Pennsylvania 19072 and whose electronically printed receipt from the dispenser contained the expiration date of the person's credit or debit card.

(Doc. no. 27, App. I.) The settlement agreement states that, per Defendants' representations and supporting documentation, this class "consists of approximately 369 individuals who engaged in a total of approximately 2,442 credit or debit card transactions during the relevant time period." (*Id.*) The parties have since clarified that the settlement class actually consists of 366 individuals. (*See, e.g.,* Pl.'s Additional Mem. Of Law, at 1; *see also* Pl.'s Mot. For Final Approval of Class Action Settlement, at 7.)

The settlement provides the proposed class members with the following benefits:

4. Rite Aid will provide a gift card, with a value of $20.00, for each credit or debit card receipt provided to a member of the Settlement Class during the Class Period that contained the expiration date of the person's credit or debit card as reflected by Defendants' records. . . .

8. Asteres shall pay for all costs of notice and settlement administration. . . .

9. Rite Aid and Asteres agree that in connection with the Lawsuit, they took prompt steps to assure the cessation of the practice of providing consumers with electronically printed receipts containing the expiration date of the person's credit card or debit card at the pharmacy self-service dispenser at [the relevant Rite Aid store].

(Doc. no. 27, App. I.) The gift cards contemplated by the settlement agreement are "subject to the same terms and conditions as a Rite Aid standard gift card." (*Id.*) They "cannot be used on items excluded by law, are not redeemable for cash, and will not be replaced if lost or stolen." (*Id.*) They are, however, freely transferrable, have no expiration date, and will be sent directly to class members upon approval of the settlement. (*See* Pl.'s Additional Mem. Of Law, at 2.)

The settlement agreement also contemplates a financial award for Plaintiff and attorneys' fees for her lawyer:

10. Class Counsel intends to apply to the Court for an award of attorneys' fees and out-of-pocket expenses not to exceed $65,000.00. Class Counsel also intends to apply to the Court for an award to the representative plaintiff in settlement of her individual claims and also for services performed on behalf of the Settlement Class not to exceed $3,750.00. Rite Aid and Asteres agree

not to oppose the foregoing applications for attorneys' fees and expenses and individual settlement award. . . .

(Doc. no. 27, App. I.) The settlement is not contingent on these awards being approved, however. It clearly provides that "a reduction by the Court or by an appellate court of attorneys' fees and/or out-of-pocket expenses or the individual settlement award sought by the Plaintiff and Class Counsel shall not affect any of the parties' other rights and obligations under this Settlement Agreement." (*Id.*)

In preliminarily approving the settlement, the Court directed the parties to provide notice of the class action settlement to all members of the settlement class. Such notice was properly provided. (*See* docs. no. 29, 30; *see also* Pl.'s Mot. For Final Approval of Class Action Settlement, at 14.) No members of the settlement class objected to the proposed settlement. (Pl.'s Mot. For Final Approval of Class Action Settlement, at 14.) However, one member of the 366–person class exercised the right to opt out of the class. (*Id.*)

### III. LEGAL STANDARD

In evaluating a motion for final approval of a class action settlement, the court must determine whether the class action settlement is fair. At the threshold, however, the court must determine that certification of the proposed settlement class is appropriate under Rules 23(a) and (b) because "[f]ederal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622, 117 S.Ct. 2231,

138 L.Ed.2d 689 (1997); *see In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir.2005) ("[T]he ultimate inquiry into the fairness of the settlement under Fed. R.Civ.P. 23(e) does not relieve the court of its responsibility to evaluate Rule 23(a) and (b) considerations.").

### A. *Legal Standard for Class Certification*

Rule 23(a) provides that a class action may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(1)-(4). Additionally, the class must fit into one of the three categories of class actions contemplated by Rule 23(b). Here, the class at issue is a so-called "damages class under Rule 23(b)(3) whereby the court "must direct to class members the best notice that is practicable under the circumstances" and afford a right to opt out from the class.[3] Fed. R.Civ.P. 23(c)(2). Rule 23(b)(3) provides a class action may be maintained if:

[T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

---

**3.** Accordingly, this memorandum does "not address the application of the (b)(1) and (b)(2) requisites which, without the important right to opt out, involve different considerations."

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 796 n. 18 (3d Cir.1995).

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

■ Of course, the court's inquiry under Rule 23(a) and (b) is not exactly the same as it would be were certification not attendant to a proposed settlement. For one, the court need not consider factors in Rule 23 that are inapplicable if the case is to settle. *See Amchem*, 521 U.S. at 620, 117 S.Ct. 2231 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." (internal citation omitted)). And, in keeping with Rule 23(e)'s policy to protect unnamed class members, the court should be particularly vigilant in determining whether to certify a class for settlement with respect to those class certification rules in Rule 23(a) and (b) that are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Id.*

### B. *Legal Standard for Fairness*

■ After determining the proposed settlement class may properly be certified under Rule 23, the court must evaluate the fairness of a proposed class action settlement under Rule 23(e). *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir.2009) (" 'Even if it has satisfied the requirements for certification under Rule 23, a class action cannot be settled without the approval of the court and a

determination that the proposed settlement is fair, reasonable and adequate.' " (quoting *Prudential*, 148 F.3d at 316)). Where, as here, "settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously," the court must protect absentee class members by applying an "even more rigorous, heightened standard." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349–50, 2010 WL 5127661, at *12 (3d Cir. Dec. 16, 2010) (internal marks omitted) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir.2004)). Ultimately, however, the question of fairness is a discretionary one committed to the district court. *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir.1995).

■ In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975), the Third Circuit "identified certain factors which district courts may employ in informing their discretion before granting final approval to the class action settlement." *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F.Supp.2d 561, 571 (E.D.Pa.2001) (Robreno, J.). More recently, the Third Circuit has instructed "the district court [to] make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *Pet Food Prods.*, 2010 WL 5127661, at *13. The *Girsh* factors include:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 157.

However, in *Prudential,* the Third Circuit cited a "sea-change in the nature of class actions" and advised that "it may be useful to expand the traditional *Girsh* factors" when appropriate. 148 F.3d at 323. The factors cited by the *Prudential* Court are:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* They are "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *Pet Food Prods.,* 2010 WL 5127661, at *13.

With these guiding principles in mind, the Court turns to address the instant motions.

## IV. MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

The Court begins by considering Plaintiff's motion for final approval of the class action settlement and the associated representation award to Plaintiff. Rule 23(e) of the Federal Rules of Civil Procedure provides that "[t]he claims, issues or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed.R.Civ.P. 23(e). The purpose of this rule is "to protect the unnamed members of the class from unjust or unfair settlements." *Ehrheart,* 609 F.3d at 593. Thus, before a class action suit that would bind class members is settled, the court must conduct a hearing and find the settlement "is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e). As discussed earlier, this requires consideration of whether class certification is appropriate for the proposed settlement class. The Court turns to address that issue.

### A. *Class Certification*
#### 1. *Rule 23(a )*

In order to certify a class, Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See supra* Part III.A. The proposed settlement class satisfies these requirements.

First, Rule 23(a)'s requirement that the class be "so numerous that joinder of all members is impracticable" is satisfied because the proposed settlement class in this case constitutes 366 individuals. *See, e.g., Beck v. Maximus, Inc.,* 457 F.3d 291, 294–95 (3d Cir.2006) (discussing with approval the district court's determination that the numerosity requirement was satisfied by virtue of the 776 class members); *see also Eisenberg v. Gagnon,* 766 F.2d 770, 785–86 (3d Cir.1985) ("The allegation

of more than 90 geographically dispersed plaintiffs met the numerosity requirement. . . .").

■ Second, the commonality requirement is satisfied because Defendants' practices in this case—printing the credit or debit card expiration date on the receipts in violation of the FACTA—were the same towards all members of the proposed settlement class. The class, after all, is comprised of "persons who, on or after June 3, 2008 and continuing through June 18, 2009, made a credit card or debit card purchase from the pharmacy self-service." (Doc. no. 27, App. I.) Thus, an applicable common question is whether Defendants "willfully" violated the FACTA under the meaning of the statute.

Third, as is often the case, the typicality requirement in Rule 23(a) is satisfied for the same reason the commonality requirement is satisfied. *See In re Cmty. Bank,* 418 F.3d at 303 (" 'The concepts of commonality and typicality are broadly defined and tend to merge.' " (quoting *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994))). Namely, that the parties share an aligned interest in recovering from Defendants for acts that were the same towards all members of the proposed settlement class. *See Prudential,* 148 F.3d at 312 (holding typicality requirement satisfied because "all members of the class would need to demonstrate [a common issue]" and therefore "their interests are sufficiently aligned"). This is particularly true given that the typicality requirement is satisfied even where "some members of the class may have additional state or federal law claims, not asserted by the named plaintiffs." *Cmty. Bank,* 418 F.3d at 303.

Finally, Plaintiff is an adequate representative of the class under Rule 23(a) because (1) Plaintiff has retained experienced counsel; and (2) Plaintiff's interests are aligned with those of the unnamed

class members. *See id.* (stating the adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.' " (quoting *Gen. Motors Corp.,* 55 F.3d at 800)). As noted, Plaintiff has precisely the same interests as the unnamed class members insofar as she wants to recover from Defendants for the same wrong. And Plaintiff retained experienced counsel to represent her in this regard.

Therefore, the Court finds the proposed settlement class satisfies Rule 23(a)'s requirements.

### 2. *Rule 23(b)*

■ In addition to the notice requirements, which were satisfied in this case, Rule 23(b) requires that "[i]ssues common to the class . . . predominate over individual issues, and the class action device must be superior to other means of handling the litigation." *Prudential,* 148 F.3d at 313–14. Both requirements are satisfied here. First, issues common to the class predominate over the individual claims because, as discussed in the context of Rule 23(a)'s commonality and typicality requirements, the claims common to the class are the same as those claims Plaintiff would assert individually. Second, the class action device is a superior means of adjudicating the applicable controversy because the civil liability contemplated for violations of the FACTA is likely to be relatively small. *See* 15 U.S.C. § 1681n(a) (allowing recovery of "actual damages sustained . . . or damages of not less than $100 and not more than $1000"). Class actions are particularly appropriate in such cases. *See Amchem,* 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the prob-

lem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997))).

Therefore, the Court finds the proposed settlement class satisfies Rule 23(b)'s requirements. Finding that the proposed settlement class meets the standard for class certification articulated in Rule 23, the Court deems it appropriate to finally certify the settlement class. Having done so, the Court turns to evaluate the settlement's fairness in accordance with Rule 23(e).

### B. *Fairness of the Settlement*

As set forth more fully below, the Court believes three aspects of the proposed settlement are particularly relevant to this Court's fairness analysis under Rule 23(e): (1) that class members are to receive gift cards rather than cash; (2) that the attorneys' fees sought greatly exceed the total class recovery;[4] and (3) that the class representative award is high considering the limited work performed by Plaintiff. However, although the Court believes these are the issues implicated in this case, *Girsh* has been interpreted to require the Court to consider a host of other factors alongside consideration of the *Prudential* factors where appropriate. *See Pet Food Prods.*, 629 F.3d at 350, 2010 WL 5127661, at *13 ("The district court must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, rea-

sonable, and adequate, as required by Rule 23(e)."); *id.* (noting the Court should make findings as to "the *Prudential* factors where appropriate").

■ This case illustrates the difficulty of a mechanical application of the *Girsh/Prudential* factors. While many of the factors appear to weigh in favor of approval on the surface, they are not truly probative of the settlement's ultimate fairness.[5] At least in a consumer case like the one before the Court, analyzing each factor in rote fashion makes the settlement seem fairer than it is. In other words, applying *Girsh/Prudential* to evaluate the fairness of a consumer case settlement may result in a mirage: a settlement that is not as favorable as it appears. With this caution in mind, the Court turns to apply the *Girsh* factors one-by-one before separately addressing the representative Plaintiff's award and applicable attorneys' fees.

### 1. *The Complexity, Expense and Likely Duration of the Litigation*

The first factor for consideration is the complexity, expense and likely duration of the litigation.[6] This case is not particularly complex. In essence, Plaintiff alleges Defendants unlawfully printed expiration dates on credit card receipts. Defendants acknowledge doing so. However, if this case were to go to trial, Plaintiff would bear the burden of proving that Defendants' actions were "willful." Namely, that Defendants actions were committed knowingly or recklessly. *See Safeco Ins.*

---

**4.** This is true even if the Court makes the generous assumption that a gift card award is equivalent in value to a cash award. At the fairness hearing, the parties admitted the class would likely have received a less generous settlement if the award was to be satisfied in cash rather than gift cards.

**5.** The first and second concerns identified by the Court are accounted for in *Girsh* and

*Prudential* respectively, but the third is not clearly covered by the factors identified in either case.

**6.** Due to overlap in some respects, matters bearing on this factor are often considered a second time under the *Girsh* framework in evaluating the fourth factor: the risks of establishing liability.

*Co. v. Burr,* 551 U.S. 47, 56–57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (willful failure to comply can be established by a knowing or reckless violation of the statute). As outlined further below, this would be a cumbersome burden for Plaintiff to meet in this case. Thus, although the predicate facts are not complicated, the Court concludes that the first factor slightly favors approval of the settlement insofar as the litigation could be costly and protracted.

### 2. The Reaction of the Class to the Settlement

The second factor to be considered under *Girsh* is the reaction of the class to the settlement. This factor favors approval of the settlement because (1) only one member of the entire class has exercised the right to opt out following notification of the settlement terms; and (2) no class members have objected to the proposed settlement. Although this is to be expected in a consumer case with relatively small recovery and a lack of institutional class members no matter the merits of the settlement, *see Schwartz,* 157 F.Supp.2d at 580, the fact that the settlement is entirely uncontested is considered evidence of its fairness. *Cf. Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118–19 (3d Cir.1990) (noting that the second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms). The Court therefore concludes that the second factor slightly favors approval of the settlement.

### 3. The Stage of the Proceedings and Amount of Discovery Completed

The third factor to be considered is the stage of the proceedings and the amount of discovery completed. The settlement agreement was entered into on April 28, 2010. By that point, the parties had already completed document production and verified answers to interrogatories. The discovery showed that Rite Aid had made its other stores compliant with the FACTA as of January 2007 but had failed to make the store at issue compliant due to an apparent oversight by Rite Aid and/or Asteres. (Pl.'s Mot. For Final Approval of Class Action Settlement, at 15.) Thus, the discovery completed revealed that Defendants' actions might not be deemed sufficiently "willful" as to violate the statute. *See Safeco,* 551 U.S. at 56–57, 127 S.Ct. 2201. With this information in hand, all parties were able to assess the strengths and weaknesses of their case. Accordingly, the third *Girsh* factor favors approval of the settlement. *See Bonett v. Educ. Debt Servs.,* No. 01–6528, 2003 WL 21658267, at *6 (E.D.Pa. May 9, 2003) (settlement favored where "[t]he parties arrived at an arms-length settlement ... [with] a clear view of the strengths and weaknesses of their case" (internal marks omitted) (quoting *In re Warner Commc'ns Secs. Litig.,* 618 F.Supp. 735, 745 (S.D.N.Y. 1985))).

### 4. The Risks of Establishing Liability

The fourth factor to consider are the risks of establishing liability. Applied strictly, this factor has the potential to produce a result that conflicts with public policy considerations. *See generally Schwartz,* 157 F.Supp.2d at 582. Followed to its logical conclusion, this factor favors approval of class action settlements of relative little merit on the basis that, but for the settlement, the class members are likely to go uncompensated. After all, according to this argument, any settlement of a weak or non-meritorious claim is better for the class than a loss "at the crucible of motion practice or trial." *Id.*

Given that a settlement would ordinarily result in an award of attorneys' fees and the pressure upon defendants to settle claims once a claim is certified, *see Malack v. BDO Seidman, LLP,* 617 F.3d 743, 755

(3d Cir.2010) (noting that "class certification puts pressure on defendants to settle claims, even if they are frivolous"), applying the fourth factor too broadly as to promote the mantra of "any settlement is better than no settlement" provides a disincentive for counsel to screen weak claims which would be unlikely to generate attorneys' fees in a non-class action context. This approach would offend important policy interests: the rigorous pre-filing screening of weak claims by counsel both saves judicial resources and supports the integrity of the class action process. Therefore, it is important to reject settlement agreements which are reached despite profound risks of establishing liability. *See Schwartz*, 157 F.Supp.2d at 582 ("[E]ven assuming that the instant claims would be denied on summary judgment or at trial, the sound alternative is not approval of an infirm compromise between the parties, but rejection of the Settlement Agreement.").

After a careful review of the record, the Court concludes that this is not quite such a case. While Plaintiff's likelihood of prevailing is far from certain, there is no indication this case was brought in bad faith simply to generate attorneys' fees, or that the case is too weak to succeed under most circumstances. At trial, Plaintiff would bear the burden of establishing that Defendants "willfully fail[ed] to comply" with the requirement to not print expiration dates on credit or debit card receipts. 15 U.S.C. § 1681n(a). That is, that Defendants either (1) knowingly; or (2) recklessly violated the act. *See Safeco*, 551 U.S. at 56–57, 127 S.Ct. 2201. As noted, the facts support an argument that Defendants' failure to comply with the FACTA did not rise to this level. Plaintiff thus faced considerable—albeit not insurmountable—risks in attempting to establish liability.

Based on this analysis, the fourth *Girsh* factor favors approval of the settlement.

### 5. *The Risks of Establishing Damages*

The fifth factor to consider are the risks of establishing damages. The potential risks discussed in the context of establishing liability apply with equal force to the Plaintiff's risks of establishing damages. As to this factor, Plaintiff also faced additional challenges due to the uncertainty surrounding the civil damages provision for FACTA violations. Indeed, while the statute states a plaintiff can recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" and "such amount of punitive damages as the court may allow," 15 U.S.C. § 1681n(a), there is—as Plaintiff points out—scant authority addressing whether the applicable damages are to be awarded on a "per person" or "per transaction" basis. However, most courts (sensibly) seem to take it as a given that damages should be awarded on a "per person" rather than a "per transaction" basis. *See Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 272–73 (4th Cir.2010) (rejecting contention damages should be assessed on a per transaction basis); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir.2006) (describing the statute to "authorize awards as high as $1,000 per person").

Here, the class is comprised of "366 member[s] ... having engaged in 2,441 transactions." (Pl.'s Mot. For Final Approval of Class Action Settlement, at 17.) Thus, the statutory damages could range from either $36,600 to $366,000 or from $244,100 to $2,441,000 depending on whether damages were awarded "per person" or "per transaction." [7] While both

---

**7.** As mentioned, the settlement uses a "per transaction" approach awarding a gift card in

valuations could tenably exceed the $48,820 value to be distributed to the class under the settlement, the "per person" methodology would likely apply based on the Court's review of existing law. Under this standard, it is possible—if not likely—that a lower value of damages would be awarded based on considerations of Defendants' culpability since the FACTA violation at issue appears to have been inadvertent. Thus, the Court concludes that the fifth factor favors approval of the settlement agreement.

### 6. The Risks of Maintaining the Class Action Through Trial

The sixth factor for consideration are the risks of maintaining the class action throughout the trial. Because "[c]lass certification is always conditional and may be reconsidered," *Bonett*, 2003 WL 21658267, at *6 (internal marks omitted) (quoting *Saunders v. Berks Credit & Collections, Inc.*, No. 00–3477, 2002 WL 1497374, at *12 (E.D.Pa. July 11, 2002)), it is likely Defendants would have vigorously opposed class certification and/or sought decertification throughout the trial. The need to defend certification appears to militate in favor of approving the settlement. However, this is true in virtually every class action suit; therefore, it should not be a basis for concluding the sixth factor favors approval. The Court therefore looks to the likelihood of defending such challenges. Here, the class would likely be able to withstand certification challenges. This militates against approval of the settlement under the sixth factor. *See Rosenau v. Unifund Corp.*, 646 F.Supp.2d 743, 754 (E.D.Pa.2009). Because the facts pertinent to the sixth factor inquiry cut both ways, the Court finds the sixth *Girsh* factor to be neutral.

### 7. The Ability of the Defendants to Withstand a Greater Judgment

The seventh factor under *Girsh* is the ability of the defendants to withstand a greater judgment. The Court believes this factor is most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement. Here, Plaintiff argues there "is no evidence of record that Defendants are unable to withstand a greater judgment" and that the seventh factor is therefore "neutral." (Pl.'s Mot. For Final Approval of Class Action Settlement, at 19.) If this were a significant issue in this case, the remedy to this apparent evidentiary deficiency would be to require the parties to supply such information to the Court. *See Pet Food Prods.*, 2010 WL 5127661, at *13.

However, the Court has not been presented with any reason to believe that Defendants face any financial instability and therefore believes this factor is largely irrelevant for the purpose of resolving the instant motion. To the extent a finding on this issue is necessary, *see id.*, the Court finds Defendants could withstand a greater judgment. *See Lazy Oil Co. v. Wotco Corp.*, 95 F.Supp.2d 290, 318 (W.D.Pa. 1997) (noting that no evidence was issued on the defendants' ability to withstand a larger judgment, but presuming the defendants did and according little weight to that fact due to risks the plaintiffs faced in proceeding to trial), *aff'd*, 166 F.3d 581 (3d Cir.1999).

Even under such circumstances, this factor does not necessarily militate against approval of the settlement. Some courts, for example, have accorded this factor lit-

the amount of $20 for each illegal receipt provided to a class member during the rele-

vant time period. (Doc. no. 27, App. I.)

tle weight based on the unique circumstances of a given case. *See, e.g., id.* Others have concluded a settlement is fair under this *Girsh* factor because financial stability today does not ensure financial stability tomorrow.[8] *See Bonett,* 2003 WL 21658267, at *7 (noting that, although defendant is "stable today and would most likely be able to withstand a greater judgment than that offered by the proposed settlement, there are no assurances that [defendant] would continue to experience a healthy economic outlook, especially in the event that the settlement were disproved and the class action were to proceed to trial").

Consequently, the Court concludes the seventh factor is neutral. Defendants' apparent ability to withstand a greater judgment today is tempered by the always present possibility that Defendants' financial health may change.

8. *The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery*

The eighth factor is the range of reasonableness of the settlement fund in light of the best possible recovery. As noted, the value to be distributed to the class is $48,820, while the possible recovery could range from either $36,600 to $366,000 or from $244,100 to $2,441,000 depending on whether damages were awarded "per person" or "per transaction." Of course, the former valuation is most likely the appropriate measure of damages under the statute. Because (1) serious questions as to liability are presented; and (2) the applicable range of damages for a violation of the FACTA is, at the least, subject to reason-

able debate, the settlement value in this case would clearly favor approval of the settlement under the eighth factor were it to be paid in cash.

Here, however, the funds at issue are to be extended to the class in the form of "gift cards." As a non-monetary award, this fund "deserve[s] careful scrutiny to ensure ... [it] ha[s] actual value to the class." Fed.R.Civ.P. 23, Advisory Committee Note. Several courts and Congress have cited concerns about some forms of non-monetary settlement awards—most frequently in the context of coupon-based settlements. *See, e.g., Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653–55 (7th Cir.2006); *see also Gen. Motors Corp.,* 55 F.3d at 806–07. Most obviously, such settlements result in "the increased possibility that the benefits afforded to class members will never be realized, since class members are provided with a future discount on a product or service with which they were previously dissatisfied." *Radosti v. Envision EMI, LLC,* 717 F.Supp.2d 37, 55 (D.D.C.2010). For this reason and others, Congress enacted a statute governing coupon settlements and calling for judicial scrutiny of such settlements in the Class Action Fairness Act of 2005. *See generally* 28 U.S.C. § 1712.

Cognizant of these considerations and applying the exacting scrutiny called for, the Court finds that the eighth *Girsh* factor favors the settlement. In this case, the gift cards have actual cash value, are to be mailed to a class of (mostly) regular customers,[9] have no expiration date, are freely transferrable, and can be used for literally

---

**8.** While the factual premise underlying this latter reasoning is true, accepting this kind of analysis makes the seventh factor a nullity in practically every fairness evaluation. That does not mean such logic is unsound—the Court finds it to be very persuasive. It merely serves as further evidence that, in many re-

spects, *Girsh/Prudential* misses the mark when treated as a one-size fits all formula for assessing fairness.

**9.** As noted, 366 class members engaged in a total of 2,441 transactions. Assuming each of the 366 class members engaged in the same

thousands of products for which ordinary consumers, including class members, have need. *Cf. Fernandez v. Victoria Secret Stores, LLC*, No. 06–4149, 2008 WL 8150856, at *6 (C.D.Cal. July 21, 2008) (approving settlement where class members were awarded a freely transferrable gift card). Under these circumstances, the gift cards are more like "cash" than "coupons." In fact, because the class members are likely to shop at Rite Aid again, they may even prefer the $20 gift cards to the lesser value that would have been awarded had the parties opted to provide a cash award.[10] For these reasons, the Court concludes the gift cards called for by the settlement are fair to class members, and that eighth factor favors approval.

### 9. The Range of Reasonableness of the Settlement Fund in Light of the Attendant Risks of Litigation

Finally, *Girsh* instructs that the Court is to consider the reasonableness of the settlement fund in light of the attendant risks of litigation. As already noted, there are several risks at hand: (1) that Plaintiff may not be able to prove wilfulness; (2) that a damages award may take into account Defendants' apparent lack of culpability; and (3) that certification would be contested throughout the proceedings. Given these risks—especially the first two—the Court finds that the ninth factor favors approval of the settlement.

### 10. Attorneys' Fees and the Representative Plaintiff Award

Having completed its analysis of the *Girsh* factors, the Court will now address the other two factors it believes to bear on the fairness of the settlement: (1) the attorneys' fees; and (2) the award to Plaintiff for representing the class. Were these issues not presented in the instant case, the Court would find the settlement to be fair based on the analysis conducted to this point. However, these factors are important considerations in evaluating a settlement's fairness because the public at large has an interest in ensuring awards and fees are equitably distributed.[11] *See generally Pet Food Prods.*, 629 F.3d at 359, 2010 WL 5127661, at *20 (Weis, J., concurring in part and dissenting in part) (describing the purpose of carefully reviewing attorneys' fees); *see also Gen. Motors Corp.*, 55 F.3d at 820 ("[W]e emphasize that the court's oversight function serves not only to detect instances of 'the actual abuse [that potential attorney-class conflicts] may cause, but also [the] potential public misunderstandings they may cultivate in regard to the interests of class counsel.'" (internal marks omitted) (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 225 (2d Cir.1987))).

However, although the settlement agreement contemplates both the attorneys' fees and the representation award by providing Defendants will not contest the same, it also provides that the Court's determination as to those issues does not affect the other rights and obligations dictated by the settlement. (*Id.*) Thus, to the extent the Court finds awarding the full amounts sought to be problematic, it can effectively cure the problem by limiting

number of transactions, each would have purchased nearly seven Rite Aid products from the pharmacy self-service dispenser over the course of a one-year period. While this assumption is imperfect, it reveals that—as a whole—the class members frequent Rite Aid and, indeed, the Rite Aid at issue in this case.

10. *See supra* note 4.

11. Thus, the fact that the attorneys' fee in this case was negotiated only after a settlement was obtained on behalf of the settlement class is, in itself, insufficient to satisfy the Court of its fairness.

the recovery and attorneys' fees as necessary.

 The Court will exercise this authority as to the award for Plaintiff for her efforts and costs in bringing the class action. Plaintiff asks the Court to approve an award of $3,750 which is to be paid entirely by Defendant–Asteres. Plaintiff acknowledges that only minimal efforts were expended in this case, but urges that the $3,750 sought is appropriate because she was available and willing to assist in the litigation by any means possible.

Courts may, and often do, approve such awards to representative plaintiffs. *See, e.g., In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 486 (E.D.Pa.2010) (outlining the bases for awarding monetary sums to representative plaintiffs in class action suits, and approving a $5,000 incentive award). Factors to be considered in ordering an award of this sort include:

> [T]he risk to the plaintiff in commencing suit, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D.Pa.2005).

Applying these considerations to Plaintiff's case militates against awarding a high sum. Indeed, there is no evidence that Plaintiff was exposed to any personal risk or unwelcomed adversity in connection with this action. Nor was Plaintiff personally burdened by participating in the law suit. In fact, as already noted, Plaintiff admits that there was little effort or participation actually required of her.[12] Nevertheless, Plaintiff asks the Court to award an amount that is 3.75 times greater than the maximum allowable statutory recovery of $1,000.

Under these circumstances, the award requested is disproportionate to the amount of work performed and the burden undertaken by Plaintiff. Thus, after carefully considering the relevant factors and the extent to which the representative plaintiff award ultimately bears on the settlement's fairness as a whole, the Court will decline to approve the award Plaintiff seeks. Instead, the Court will approve an award of $1,000, equal to the statutory maximum recovery under the FCRA's civil damages provision.[13]

Because the question of attorneys' fees is invoked by way of a separate motion, the Court turns to address that issue in the following heading. As discussed *infra*, the Court ultimately finds the attorneys' fees to be reasonable under the circumstances although it does so with some reservations. Thus, having made the abovementioned adjustment to the representation award, the Court concludes that the settlement is fair. It will therefore grant Plaintiff's motion for final approval of the class action settlement.

## V. MOTION FOR ATTORNEYS' FEES

Plaintiff moves for attorneys' fees in the amount of $65,000, submitting documenta-

---

**12.** The Court does not doubt that Plaintiff was ready, willing and able to expend effort as needed, but the fact remains that she did little else other than serve as the representative plaintiff in this action and attend the fairness hearing.

**13.** In accordance with the parties' settlement agreement, the additional $2,750 shall not be added to the total class recovery. (*See* Doc. no. 27, Exhibit A.)

tion establishing that, in connection with this case, (1) David A. Searles, a partner of the firm, spent 93.20 hours at an hourly rate of $650 for a total of $60,580 in fees; (2) Elise Garber, a paralegal/law clerk of the firm, spent 23.30 hours at an hourly rate of $225 for a total of $5,242.50 in fees; and (3) Christian Koerner, a paralegal/law clerk of the firm, spent 64.50 hours at an hourly rate of $175 for a total of $11,287.50. Plaintiff has also submitted documentation supporting a total of $1,339.42 in unreimbursed expenses. The sum of Plaintiff's counsel's total lodestar ($77,110) and unreimbursed expenses ($1,339.42) exceed the $65,000 sought by way of the instant motion.[14]

Because the FCRA is a statutory fee-shifting statute, Plaintiff urges the Court to award the $65,000 sought based on Plaintiff's counsel's lodestar. Defendants do not contest Plaintiff's motion, the granting of which would result in attorneys' fees that exceed the $48,820 in gift card recovery for class members. Of course, Defendants' apathy on this issue is not unusual because their primary interest is in buying peace. See Pet Food Prods., 629 F.3d at 359, 2010 WL 5127661, at *20 (Weis, J., concurring in part and dissenting in part) (describing "the parties' disincentives to invoke judicial scrutiny of fee awards").

## A. The Nature of the Court's Review

In determining whether to award counsel attorneys' fees, the court "must conduct a 'thorough judicial review' of class counsels' request for attorneys' fees." Perry, 229 F.R.D. at 118. The court, as

both Rule 23 and the applicable statute entitling counsel to attorneys' fees in this case provide, is tasked with ensuring that the attorneys' fees sought are reasonable. See Fed.R.Civ.P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"); 15 U.S.C. § 1681n(a)(3) (providing "the costs of the action together with reasonable attorney's fees as determined by the court" are recoverable). As noted, institutional concerns of fairness are necessarily implicated in this inquiry. See Gen. Motors Corp., 55 F.3d at 820.

As explained further infra, courts may fix attorneys' fees by reference to counsel's total lodestar. Of course, in cases where it is understood counsel's compensation will not be satisfied by a paying client, adherence to this methodology enables counsel to essentially define the value of the services provided. This could lead to a logically unsettling and potentially problematic result: an award of attorneys' fees that greatly exceeds the total monetary recovery for the class.[15] After all, success is intimately tied to reasonableness and this outcome would not generally be viewed as a successful one in an ordinary business transaction based on market forces.

Certain consumer cases are different. The statute at issue in this case is illustrative: it is a remedial statute which contemplates relatively low recovery and has a fee shifting provision for attorneys' fees. See 15 U.S.C. § 1681n(a). Assuredly, Congress envisioned that the amount of attorneys' fees would exceed the total class recovery in certain consumer class action

---

14. Plaintiff represents that, due to additional briefing requested by and submitted to the Court, (see doc. no. 35), the total sum for fees and expenses has increased to approximately $86,000 since the motion for attorneys' fees was filed. (See Pl.'s Additional Mem. Of Law,

at 6–7 n. 3.) The request for an award of $65,000 remains unchanged.

15. In this case, the attorneys' fees exceed the total class recovery even assuming that the gift cards are equivalent in value to cash.

suits and, indeed, that this might be the likely outcome in cases like the one before the Court. On the other hand, Congress did not issue class counsel a blank check to cash for services rendered at the end of a consumer class action suit; the Court must assess reasonableness. This task requires the Court to reconcile the legislatively recognized interest in compensating attorneys who take on such cases with the Court's foundational duty to preserve the integrity of the class action process.

Therefore, where the Court is called to make an award on the basis of counsel's lodestar and expenses in connection with a class action settlement and this sum exceeds the class' recovery, the Court believes it must be particularly vigilant in evaluating the reasonableness of attorneys' fees.

### B. Methods to Determine Whether to Award Attorneys' Fees

Broadly speaking, courts in the Third Circuit have used two methods to determine whether attorneys' fees are warranted in a class action—the "lodestar method" and the "percentage of recovery" method. *See Prudential*, 148 F.3d at 333 (describing the two methods). The lodestar method has two separate components, both of which must be "reasonable": (1) the rate charged; and (2) the total hours spent. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir.1983) (describing a "twin inquiry into reasonableness: a reasonable hourly rate *and* a determination of whether it was reasonable to expend the number of hours in a particular case"). Courts applying the lodestar method are to "multipl[y] the number of hours reasonably worked by a reasonable hourly rate." *Perry*, 229 F.R.D. at 118–19.

Whether the rate charged is reasonable is determined by "assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience and reputation." *Id.* at 119. The question of hours spent is slightly more complicated. As a starting point, this latter determination requires the Court to exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see Ursic*, 719 F.2d at 676. In addition to questioning whether the hours spent are reasonable, this component of the lodestar method necessitates inquiry into who billed the hours. Just as "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn," counsel should not be using "highly priced talent for matters easily delegable to non-professionals or less experienced associates." *Ursic*, 719 F.2d at 677.

In contrast to the lodestar method, the percentage of recovery method, "awards class counsel a fixed portion of the settlement fund." *Perry*, 229 F.R.D. at 119. Under the percentage of recovery method, the determination of fees is assessed by "examining the size of the settlement fund, any objections to the fee request, counsel's skill and efficiency, the complexity of the litigation and the amount of time counsel spent on it, the risk of nonpayment, and awards in similar cases." *Perry*, 229 F.R.D. at 119; *see Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000).

The Third Circuit has instructed that the lodestar method is typically favored in "statutory fee shifting cases" insofar as it "assures counsel undertaking socially beneficial litigation ... an adequate fee irrespective of the monetary value of the final relief achieved for the class." *Gen. Motors Corp.*, 55 F.3d at 821. Thus, because the damages provision of the FCRA includes such a mechanism for attorneys fees,

courts evaluating attorneys' fees following settlements of FCRA actions have often employed the lodestar method. *See, e.g., Barel v. Bank of Am.*, 255 F.R.D. 393, 403 (E.D.Pa.2009) (beginning analysis by conducting a lodestar analysis); *see also Perry*, 229 F.R.D. at 120–21 (same).

However, the Third Circuit has cited the prudence of cross-checking the lodestar result against that which would be suggested under the percentage of recovery method, *see Gen. Motors Corp.*, 55 F.3d at 821 (noting there is "an advantage to using the alternative method to double check the fee"), and courts applying lodestar method in FCRA cases often do so. *See, e.g., Barel*, 255 F.R.D. at 404 (performing a cross-check using the percentage of recovery method); *see also Perry*, 229 F.R.D. at 123 (same). Of course, "the district court has wide discretion to decide which method of fee calculation to apply" as neither method is "mandatory." *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 734 (E.D.Pa.1995) (Robreno, J.).

## C. *Application*

■ Because this case involves a statutory fee shifting provision, the Court begins its analysis with the two-pronged lodestar method. *See Gen. Motors Corp.*, 55 F.3d at 821. In exercising the exacting scrutiny befitting a case of this nature, the Court has carefully reviewed Plaintiff's motion, including counsel's time sheets and the accompanying affidavit averring that the rates charged—here, $650 for a partner and $175–$225 for paralegal/law clerks—are the same as those charged for legal services in other class action cases of similar complexity. The Court has also reviewed class counsel's biography, which details his extensive experience in consumer class action cases.

After reviewing this record, the Court finds the rates charged to be reasonable. *See Serrano v. Sterling Testing Sys., Inc.*, 711 F.Supp.2d 402, 422 (E.D.Pa.2010) (deeming hourly rates between $290 and $650 for consumer class action attorneys as "within the range charged by attorneys with comparable experience levels"); *id.* n. 13 ("The rates charged for law clerks and paralegals are between $125.00/hour and $225.00/hour, which is reasonable under the circumstances."). The total time spent is also reasonable for a case of this nature, and the billing sheets reflect that the work was properly allocated to reduce costs. Indeed, the bulk of the legal research and factual discovery was completed by paralegal/law clerks. Under these circumstances, the Court concludes the $65,000 Plaintiff's seeks is warranted under the lodestar method.

Of course, cross-checking this figure against the percentage of recovery method may well suggest a different result given that the attorneys' fees are greater than the total class recovery. Cognizant of this, Plaintiff argues that a cross-check is inappropriate in a statutory fee-shifting case. The Court rejects the notion that a cross-check is universally unnecessary in a statutory fee-shifting case. However, the cross-check's utility is limited in consumer cases where, as in this case, the total class recovery is relatively small. Moreover, the Court is persuaded that class counsel worked efficiently to secure a favorable outcome for the class. Thus, the fact that a crosscheck might militate against awarding $65,000 is not fatal to Plaintiff's motion under the facts of this case. *See Gen. Motors Corp.*, 55 F.3d at 821.

Consequently, the Court finds the attorneys' fees sought are reasonable and concludes that such fees do not offend what is,

with one exception,[16] an otherwise fair settlement. While the Court has the above-mentioned reservations about what the lodestar methodology might permit if unchecked, this is not—despite what the disparity between the fees sought and the total class recovery could reasonably denote—a case where the class action settlement process has been abused. The Court will therefore grant Plaintiff's motion for attorneys' fees in the amount of $65,000.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for final approval of class action settlement will be granted in part and denied in part; it will be denied to the extent it seeks more than $1,000 for Plaintiff's services as the class representative, but otherwise granted. Plaintiff's motion for attorneys' fees will be granted. An appropriate Order will follow.

### ORDER

AND NOW, this 18th day of January, 2011, it is hereby **ORDERED** that Plaintiff's motion for final approval of class action settlement (doc. no. 31) is **GRANTED in part and DENIED in part** as follows: 1) the representative plaintiff shall be awarded the sum of $1,000; 2) Plaintiff's motion is otherwise **GRANTED;**

It is hereby further **ORDERED** that Plaintiff's motion for attorneys' fees (doc. no. 32) is **GRANTED.**

AND IT IS SO ORDERED.

---

**16.** As explained in Part IV, the representation award the settlement permitted Plaintiff to seek without opposition is excessive.