Matthew **RIPLEY**, et al., Plaintiffs,

v.

**SUNOCO, INC.**, et al., Defendants.

Civil Action No. 10–1194.

United States District Court,
E.D. Pennsylvania.

June 26, 2012.

---

Debra A. Jensen, Michael W. McGurrin, Galfand Berger, LLP, Philadelphia, PA, Eric L. Young, Egan Young, Blue Bell, PA, for Plaintiffs.

Kelly Dobbs Bunting, Robert M. Goldich, Greenberg Traurig PA, Philadelphia, PA, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

TABLE OF CONTENTS

I. BACKGROUND ................................................. 305

II. LEGAL STANDARD ............................................ 306

III. DISCUSSION ................................................. 306
 A. Class Certification ......................................... 306
 1. Rule 23(a)'s Requirements ........................... 307
 a. Numerosity ...................................... 307
 b. Commonality .................................... 307
 c. Typicality ....................................... 308
 d. Adequacy of Representation ...................... 309
 2. Rule 23(b)'s Requirements ........................... 309
 B. Fairness ................................................ 310
 1. Terms of the Settlement Agreement .................. 311
 2. Analysis of the Settlement Agreement ............... 311
 a. The complexity and duration of the litigation ...... 311
 b. The reaction of the class to the settlement .......... 312
 c. The stage of the proceedings and amount of discovery completed ..... 312
 d. The risks of establishing liability and risks of establishing damages ...................................... 312
 e. The risks of maintaining a class action ............ 313
 f. The ability of Defendant to withstand a greater judgment ........... 313
 g. The range of reasonableness of the settlement in light of the best recovery, and the range of reasonableness of the settlement in light of all the attendant risks of litigation ........................ 313
 h. The relevant Prudential factor—approval of attorneys' fees ........... 313
 i. The size of the fund created and the number of persons benefitted ........................................ 314
 ii. The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel ............................... 314
 iii. The skill and efficiency of the attorneys involved .............. 314
 iv. The complexity and duration of the litigation ................. 314
 v. The risk of nonpayment ....................... 315
 vi. The amount of time devoted to the case by plaintiffs' counsel ........................................ 315
 vii. The awards in similar cases ................... 315
 viii. Lodestar check ............................... 315
 C. Objection to the Settlement ................................ 315
 D. Approval of Payment to Claims Administrator .............. 316
 E. Approval of Reversionary Interest Beneficiary ............. 316

V. CONCLUSION ................................................. 316

## I. BACKGROUND

Plaintiffs Matthew Ripley, Richard Sim, Joseph Grosse, Anne Minor, Michael Olsen, Gabriel Schwartz, Bradford Takacs, and James Savage ("Plaintiffs") commenced this action on behalf of themselves and all other similarly situated individuals against Sunoco, Inc. ("Defendant").[1] Plaintiffs are eight current or former operations and maintenance employees employed at Sunoco's Philadelphia, Pennsylvania refinery, located at 3144 West Passyunk Avenue (the "Refinery"). Plaintiffs aver that Defendant failed to pay them for overtime wages when they worked over forty hours per week. Plaintiffs seek to represent a putative class of present and former operations and maintenance employees at the Refinery during a class period commencing on February 24, 2007.

Following pre-class certification discovery, and after much negotiation and two settlement conferences with Magistrate Judge Thomas Rueter, the parties reached a settlement agreement in November 2011 for a total of $675,000, inclusive of attorneys' fees

---

1. Plaintiffs also sued Michael McKee and Stephen Koczirka, but have since dismissed those individual Defendants from the suit. *See* ECF No. 20.

and costs. Thereafter, Plaintiffs filed a motion for preliminary class certification and approval of the settlement. ECF No. 39. The Court held a status and scheduling conference to discuss this preliminary approval of settlement. At this conference, the Court required Plaintiffs to include various dates and settlement amounts in their preliminary notice. Plaintiffs complied with this request, and the Court preliminarily certified the class and approved the settlement on December 15, 2011. ECF No. 43. The Court also ordered notice sent to proposed class members. ECF No. 44. The Court received one objection to the settlement agreement that argued the proposed attorneys' fees of $222,750 were excessive, and that the claimed recovery was not reasonable. Plaintiffs recently submitted a motion for final certification and settlement approval. ECF No. 52. The Court held oral argument. The matter is now ripe for disposition.

## II. LEGAL STANDARD

■■■ Class action settlements must be approved by the Court. *See* Fed.R.Civ.P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."). At the threshold, the court must determine that certification of the proposed settlement class is appropriate under Rules 23(a) and (b) because "[f]ederal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 622, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see In re Cmty. Bank of N. Va.,* 418 F.3d 277, 299 (3d Cir.2005) ("[T]he ultimate inquiry into the fairness of the settlement under [Federal Rule of Civil Procedure] 23(e) does not relieve the court of its responsibility to

evaluate Rule 23(a) and (b) considerations."). In addition, the Court will consider whether the Settlement Agreement is fair, reasonable, and adequate. The purpose of this inquiry is "to protect the unnamed members of the class from unjust or unfair settlements." *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 593 (3d Cir.2010). In making this determination, the Court acts as a "fiduciary, guarding the claims and rights of the absent class members." *Id.*

## III. DISCUSSION

Plaintiffs move for final approval of the class action settlement. In accordance with the standard of review, the Court must determine (1) that certification of the proposed class is appropriate and (2) that the settlement "is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e).

### A. *Class Certification*

Before turning to the fairness of the proposed settlement, the Court must determine that certification of the proposed settlement class is appropriate under Rules 23(a) and (b).[2] To do so, Plaintiffs must satisfy all of the requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b). *See Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2548, 180 L.Ed.2d 374 (2011); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 309 (3d Cir.1998).

■■■ "Rule 23 does not set forth a mere pleading standard," but instead "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes,* 131 S.Ct. at 2551. The Supreme

---

**2.** Of course, the inquiry under Rule 23(a) and (b) is not exactly the same where the parties intend to settle as it would be if the case was planned for trial. *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231. Indeed, when evaluating whether to finally certify a class for settlement, the court should not consider matters in Rule 23 that do not apply if the case is to settle. *Id.* However, the determination of whether the class meets Rule 23's criteria is a rigorous one because it is the role of the Court to protect unnamed plaintiffs' possible

claims from being included in an overly broad class. *See Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) ("Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation— effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." (internal quotation marks omitted)).

Court has repeatedly "recognized ... that 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 2551 (quoting *Gen. Tele. Co. of Sw. v. Falcon,* 457 U.S. 147, 160–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)) (citation omitted). Indeed, even before *Dukes,* the Third Circuit recognized that in keeping with Rule 23(e)'s policy to protect unnamed class members, the Supreme Court has instructed that the court should be particularly vigilant in determining whether to certify a class for settlement with respect to those class certification rules in Rule 23(a) and (b) that are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Prudential,* 148 F.3d at 308.

 The Supreme Court has also recognized that "[f]requently, th[is] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. Th[is] cannot be helped.'" *Dukes,* 131 S.Ct. at 2551 (quoting *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364). Indeed, "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Dukes,* 131 S.Ct. at 2552 (quoting *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364).

It is with this guidance that the Court evaluates whether the proposed class in this case meets the requirements under Rule 23(a) and (b) to establish a class. In this regard, Plaintiffs seek final certification of the following class: "All current and former operations and laboratory employees employed by Defendant at its Philadelphia Refinery at any time from February 24, 2007 through the present." Joint Stipulation of Settlement and Release ¶ 3, Pls.' Mot. for Preliminary Approval of Settlement Ex. 1, ECF No 39–1.

### 1. *Rule 23(a)'s requirements*

Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation to certify a class. *See* Fed.R.Civ.P. 23(a).[3]

#### a. *Numerosity*

 To numerosity, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). In this case, the class includes over 485 individuals. While there is no set minimum, if the potential class is greater than forty, the numerosity requirement is generally met. *See Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir.2001) (finding that numerosity requirement will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40."); *Eisenberg v. Gagnon,* 766 F.2d 770, 785–86 (3d Cir.1985) (class of 90). Thus, numerosity is met here.

#### b. *Commonality*

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" *Dukes,* 131 S.Ct. at 2550–51 (quoting Fed.R.Civ.P. 23(a)(2)). Before *Dukes,* courts believed that "the commonality standard of Rule 23(a)(2) [was] not a high bar." *Chiang v. Veneman,* 385 F.3d 256, 265 (3d Cir.2004) (finding "the commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class members, as 'the commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class'" (quoting *Johnston v. HBO Film Mgmt.,* 265 F.3d 178, 184 (3d Cir.2001))).

However, the Supreme Court, in *Dukes,* clarified this standard:

Th[e] language [of Rule 23(a)'s commonality requirement] is easy to misread, since any competently crafted class complaint literally raises common questions. For ex-

---

**3.** Rule 23(a) provides that a class action may be maintained only if:

　(1) the class is so numerous that joinder of all members is impracticable;

　(2) there are questions of law or fact common to the class;

　(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

　(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(1)–(4).

ample: Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. What matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 131 S.Ct. at 2551 (citations omitted) (internal quotation marks omitted).

■ In this case, the commonality requirement is met. Here, while each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation, the wrong was from Defendant's alleged common timekeeping and payroll policies that precluded proper compensation for overtime work.

To be sure, there were several possible theories upon which Plaintiffs sought recovery. Plaintiffs sought compensation for the following work: clearing a security checkpoint at the beginning of each shift; engaging in off-site and off-the-clock work while "on-call," donning and doffing personal protective equipment, obtaining and storing work tools, traveling to and from assigned work sites, preparing and cleaning work equipment, and engaging in shift-change briefings with co-workers. While it is unclear if each instance of this alleged uncompensated work affected every Plaintiff in the class, this does not run afoul of *Dukes*. As the Seventh Circuit recently noted in a Fair Labor Standards Act case, while "there might be slight variations in how [the defendant] enforced its overtime policy, both classes maintain a common claim that [the defendant] broadly enforced an unlawful policy denying employees earned overtime compensation. This unofficial policy is the common answer that potentially drives the resolution of this litigation." *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909 (7th Cir. 2012). Accordingly, the "common answer" in this case would be whether Defendant had such policies that prevented payment for overtime work, and if it did, then Plaintiffs had the potential to recover. Commonality is met here.

#### c. *Typicality*

■ In determining typicality, the third 23(a) requirement, the Court must examine whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg*, 766 F.2d at 786. Typicality permits "the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment." *Id.* As is often the case, the typicality requirement in Rule 23(a) is likely satisfied for the same reasons the commonality requirement is satisfied. *See Community Bank*, 418 F.3d at 303 (" 'The concepts of commonality and typicality are broadly defined and tend to merge.' " (quoting *Baby Neal ex rel. Kanter v. Casey*, 43

F.3d 48, 56 (3d Cir.1994))). Accordingly, for the same reasons expressed above, Plaintiffs meet the typicality requirement.

### d. *Adequacy of Representation*

 The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Community Bank*, 418 F.3d at 303 (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir.1995)).[4] Here, the named Plaintiffs' interests are aligned with the class as both seek to prove that Defendant's payroll policies and procedures prevent the payment of proper overtime wages. Also, class counsel have extensive resumes and history of representing plaintiffs and their associated classes in large scale class action lawsuits such as this. Thus, the final Rule 23(a) requirement is met.

### 2. *Rule 23(b)'s Requirements*

In addition to satisfying the Rule 23(a) requirements, a putative class must fall within one of the categories enumerated in Rule 23(b). *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 624 (3d Cir.1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In this case, Plaintiffs seek certification under Rule 23(b)(3), which provides that certification may be granted if:

[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or de-

fense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

 "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir.2008). The predominance requirement overlaps with the commonality and typicality requirements in Rule 23(a); however, it is "far more demanding" than the commonality and typicality requirements. *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231. If proof of the essential elements of a cause of action requires individual treatment, "'class certification is unsuitable.'" *Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir.2001)). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual ... a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (citations omitted) (internal quotation marks omitted). In this case, there is predominance of common issues of law and fact. The key issue is whether Defendant had a policy or practice of failing to pay certain employees overtime for time they worked over forty hours a week. The Complaint alleges that Defendant's policy affected payment for time spent clearing a security checkpoint at the beginning of each work shift, engaging in off-site and off-the-clock work while "on call," donning and doffing personal protective equipment, obtaining and storing work tools, traveling to and from assigned work

---

4. The adequacy of counsel, for the Rule 23(a) requirements, is analyzed under Rule 23(g). *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir.2010). The preliminary approval order made Egan Young and Galfand Berger class counsel.

*See* Order Granting Preliminary Approval of Settlement ¶ 4, ECF No. 43. These firms meet the requirements of 23(g) as evidenced in their exhibits, the discovery process, and their extensive efforts in pursuing the case.

sites, preparing and cleaning work equipment, and engaging in required shift-change briefings with co-workers. While these are all different avenues of non-payment of overtime, the common policy of not paying for overtime predominates in this case and is the key to liability.

In addition, under Rule 23(b)(3), the class must satisfy the test for superiority. To do so, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Prudential*, 148 F.3d at 307–08 (internal quotation marks omitted). This case is about a claim for failure to pay overtime wages. There would have been little incentive for Plaintiffs to bring their claims individually because the amount of recovery, if any, would be very small. Class actions are particularly appropriate in such cases. *See Amchem*, 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks omitted)). Therefore, the Court will certify Plaintiffs' proposed class for purposes of settlement approval.

B. *Fairness*

After certifying the proposed class, the Court must evaluate the fairness of a proposed class action settlement under Rule 23(e). *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir.2009) (" 'Even if it has satisfied the requirements for certification under Rule 23, a class action

cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate.' " (quoting *Prudential*, 148 F.3d at 316)). Where, as here, " 'settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously,' " the court must protect absentee class members by applying an "even more rigorous, heightened standard." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir.2010) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir.2004)) (internal quotation marks omitted).

In determining whether the Settlement Agreement is fair, reasonable, and adequate, the Court will consider at least the following nine factors:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Prudential*, 148 F.3d at 317 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975) (internal quotation and editorial marks omitted)). Whether a settlement is fair under these factors is a discretionary determination committed to the district judge.[5] *See, e.g.,*

---

5. The Court may also consider the following additional non-exclusive factors, commonly referred to as the *Prudential* factors:

[T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to

be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323. While the Court "must make findings as to each of the nine *Girsh* factors," the *Prudential* factors are merely "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

*Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir.1995).

### 1. *Terms of the Settlement Agreement*

The Settlement Agreement provides a monetary settlement fund of $675,000. This fund includes the attorneys' fees and costs, litigation and capped administrative costs, as well as a $25,000 set-aside to satisfy late claims. The total attorneys' fees requested are $223,352.42; this represents 33 percent of the common fund plus the costs of $602.42.[6] The requested claims administrator fee is $25,000. The Settlement Agreement provides that each eligible employee shall be compensated on a pro rata basis for each "Qualifying Calendar Quarter" worked during the class period. *See* Joint Stipulation of Settlement and Release ¶ 12(d)(i). A Qualifying Calendar Quarter is each three-month period during which an eligible employee worked for at least eight weeks. *Id.* Given this definition, the settlement for each eligible employee was calculated as follows: Net Settlement Fund, divided by the total number of Qualified Calendar Quarters, which equals the monetary value of one Qualified Quarter. Then, the value of the one Qualified Quarter is multiplied by the total number of Qualified Quarters worked by each class member. There were 441 claims forms recorded, with one objection, and three written opt-out requests. Under this formula, the average payout to each Plaintiff is approximately $878.33, with the maximum payout to a Plaintiff of approximately $1,131.23. Pls.' Mot. for Final Approval of Settlement 6, ECF No. 52.

In addition to this monetary relief, there is also non-monetary relief, the pertinent terms of which are summarized as follows:

Defendant is responsible for maintaining accurate time records and employees are required to confirm in writing their accuracy. Memo. of Agreement Regarding Wage and Hour Practices ¶ 1, Pls.' Mot. for Preliminary Approval of Settlement Ex. 2, ECF No. 39–2.

The twelve-hour EOWEO shifts will be expanded to twelve hours and ten minutes, thus start times for each shift will be 6:20 a.m. and 6:20 p.m. *Id.* ¶ 2. This additional ten minutes allows for overlap and transition between the shifts. *Id.* For any time worked over the ten minutes, an employee will be paid overtime with prior approval of their supervisor. *Id.*

Changing in and out of NOMEX protective clothing is not work activity. *Id.* ¶ 3. Any emergency duties performed before or after an employee's shift will be compensated, however. *Id.*

The Company will strictly enforce the day shift and night shift start times of 6:20 a.m. and 6:20 p.m., respectively, of the twelve-hour EOWEO shift schedule. *Id.* ¶ 4.

The extra ten minutes of pre-shift work added will be paid at an overtime rate in accordance with currently-in-place EOWEO Agreement. *Id.* ¶ 5.

The extra ten minutes will be not counted as actual overtime work for purposes of calculating employee overtime limits. *Id.* ¶ 6.

The above terms will be implemented within thirty days after the Court's final approval of the settlement. *Id.* ¶ 7.

### 2. *Analysis of the Settlement Agreement*

Under the *Girsh* factors and relevant *Prudential* factor, the Settlement Agreement is fair, reasonable, and adequate.

#### a. *The complexity and duration of the litigation*

█ The first *Girsh* factor weighs slightly in favor of approving the settlement. Plaintiffs point to the early settlement of this case, before dispositive motions were decided. Thus, the duration from settlement to final appeal would have the potential to be long and drawn out. Other than this, with respect to complexity and duration, Plaintiffs point to run-of-the-mill facts such as the need to review discovery, need to prepare dispositive motions, and the ability of a party to appeal.

---

**6.** Plaintiffs' counsel's records indicate that their costs are $890.14, but they only request $602.42. The Court will only consider the costs to be $602.42, as this is the amount included within their attorneys' fee request. *See* ECF No. 56.

### b. The reaction of the class to the settlement

■ The second *Girsh* factor weighs in favor of approving settlement. Only one class member objected to the terms of the settlement or the value of the potential claims. Moreover, less than 1 percent of the eligible class members opted out of the settlement. The mostly uncontested nature of this settlement favors approval of the settlement. *Cf. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir.1990) (noting that second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms).

### c. The stage of the proceedings and amount of discovery completed

■ Despite the early settlement of this case, the third *Girsh* factor weighs slightly in favor of approving settlement because the parties conducted an "exhaustive investigation of the facts and the underlying claims and defenses in this litigation." Pls.' Mot. for Final Approval of Settlement 10. Under this factor, "[t]he parties must have an 'adequate appreciation of the merits of the case before negotiating.'" *Prudential*, 148 F.3d at 319 (quoting *Gen. Motors*, 55 F.3d at 813).

A lawyer for class counsel, Eric Young, submitted a declaration where he stated that class counsel conducted interviews of many of the current and former employees of Defendant. Young Decl. ¶ 6, Pls.' Mot. for Final Approval of Settlement Ex. 2. Class counsel also reviewed payroll, policy, and timekeeping documents produced by Defendant in discovery. *Id.* Class counsel, with Defendant's consent, performed an informal inspection of Defendant's Philadelphia refinery. *Id.* Moreover, the settlement process in this case took over six months. The parties eventually engaged Magistrate Judge Thomas Rueter to facilitate settlement.

Therefore, the Settlement Agreement was "the product of informed negotiations." *See Prudential*, 148 F.3d at 319. Thus, the third *Girsh* factor weighs in favor of approving the Settlement Agreement. *See Bonett v. Educ.*

*Debt Servs.*, No. 01–6528, 2003 WL 21658267, at *6 (E.D.Pa. May 9, 2003) (settlement favored where "[t]he parties arrived at an arms-length settlement ... [with] a clear view of the strengths and weaknesses of their case" (quoting *In re Warner Commc'ns Secs. Litig.*, 618 F.Supp. 735, 745 (S.D.N.Y. 1985)) (internal quotation marks omitted)).

### d. The risks of establishing liability and risks of establishing damages

■ The fourth and fifth *Girsh* factors weigh in favor of approving the settlement. These factors, "survey the possible risks of litigation ... to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319. This Court previously noted that these two factors "[a]pplied strictly, ... [have] the potential to produce a result that conflicts with public policy considerations." *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 252 (E.D.Pa.2011) (Robreno, J.). That is so because these factors favor "approval of class action settlements of relative little merit on the basis that, but for the settlement, the class members are likely to go uncompensated [at all]." *Id.*

Plaintiffs indicate that a large majority of the proposed class worked significantly less than forty hours a week. Thus, their claims for unpaid overtime were limited. Moreover, in many cases the allegations of pre- and post-shift donning and doffing of personal protective equipment and clothing were difficult to prove.[7] Also, Defendant's operational policies and procedures objectively refuted Plaintiffs' claims.

After a careful review of the record, the Court's concerns in *Reibstein* are not offended in this case. While Plaintiffs' likelihood of prevailing is far from certain, there is no indication this case was brought in bad faith simply to generate attorneys' fees, or that the case is too weak to succeed under most circumstances. Indeed, as Plaintiffs' counsel explained at oral argument, while the donning and doffing claims may have been weak,

---

7. Indeed, at oral argument Plaintiffs conceded that after final review of the evidence, their claims for donning and doffing personal protective equipment had no good faith basis for proceeding in the suit.

the claims for failure to pay overtime for shift-change work were much stronger. Therefore, the fourth and fifth *Girsh* factors weigh in favor of settlement approval because there were significant risks to Plaintiffs' claims and may have resulted in no recovery had the case proceeded, but not such risks that this litigation was vexatious. *See id.* at 253.

### e. *The risks of maintaining a class action*

The sixth *Girsh* factor is neutral. Because "[c]lass certification is always conditional and may be reconsidered," *Bonett,* 2003 WL 21658267, at *6 (quoting *Saunders v. Berks Credit & Collections, Inc.,* No. 00–3477, 2002 WL 1497374, at *12 (E.D.Pa. July 11, 2002) (internal quotation marks omitted)), it is likely Defendant would have vigorously opposed class certification or sought decertification throughout the trial. The need to defend certification appears to militate in favor of approving the settlement. However, this is true in virtually every class action suit; therefore, it should not be a basis for concluding the sixth factor favors approval. Here, there is no apparent reason why the Court would decertify or modify the class at any time during the litigation. Plaintiffs provide no argument other than that there was no guaranty that a § 216(b) certification, under the Fair Labor Standards Act, would have survived a decertification motion, or that a Rule 23 motion would have been successfully adjudicated. Therefore, the sixth *Girsh* factor is neutral.

### f. *The ability of Defendant to withstand a greater judgment*

The seventh *Girsh* factor is neutral. This factor "is concerned with whether [Defendant] could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.,* 264 F.3d 201, 240 (3d Cir.2001). Plaintiffs argue that, as Defendant is a large multi-billion dollar company, this factor is irrelevant to the proceeding. While that may be the case, there is no evidence in the record for the Court to make that conclusion one way or another. Thus, the seventh *Girsh* factor is neutral.[8]

### g. *The range of reasonableness of the settlement in light of the best recovery, and the range of reasonableness of the settlement in light of all the attendant risks of litigation*

The eighth and ninth *Girsh* factors are neutral. These factors "ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential,* 148 F.3d at 322. "In order to assess the reasonableness of a proposed settlement seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Id.* (internal quotation marks omitted). Plaintiffs provide no argument for the Court to consider except that experienced counsel represented both parties and, because Judge Rueter presided over the settlement negotiations, the settlement is fair. With this scant record, the Court cannot conclude either way on the weight to give these factors; therefore, the eighth and ninth *Girsh* factors are neutral.

### h. *The relevant prudential factor— approval of attorneys' fees*

As the one objection to the settlement takes issue with the amount of attorneys' fees in this case, the Court will analyze this *Prudential* factor. Plaintiffs' counsel seeks an award of attorneys' fees and costs in the amount of $223,352.42. This represents 33 percent of the common fund created by the Settlement Agreement plus counsel's costs— $602.42.

In determining whether to award counsel attorneys' fees, the court "must conduct a thorough judicial review of class counsels' request for attorneys' fees." *Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 118 (E.D.Pa.2005) (internal quotation marks omitted). The court is tasked with ensuring

---

**8.** A fact noted at the hearing, although not developed, is the uncertain business future of the Refinery.

that the attorneys' fees sought are reasonable. *See* Fed.R.Civ.P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). As noted, institutional concerns of fairness are necessarily implicated in this inquiry. *See Gen. Motors*, 55 F.3d at 820.

When assessing the reasonableness of attorneys' fees, the Court considers the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir.2005) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000)).

### i. The size of the fund created and the number of persons benefitted

In this case, the fund created is $675,000, for claims by over 400 individuals. The average payout to each Plaintiff is approximately $878.33, with the maximum payout to a Plaintiff of approximately $1,131.23. "As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Bredbenner v. Liberty Travel, Inc.*, No. 09–905, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011). As explained below, class counsel's fees in this case represent 33 percent of the common fund and is within the range of reasonable fees, on a percentage basis, in the Third Circuit. Therefore, the size of the fund in relation to the number of people weighs in favor of finding the fees reasonable.

### ii. The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel

In this case, there is only one objection to the size of both the fund and attorneys' fees. Plaintiffs cite to several cases where there were few objections and the courts found this factor weighed in favor of finding the attorneys' fees reasonable, but in each of those cases the number of class members was much greater than in this case. For example, in *Rite Aid*, the Third Circuit held that the "District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request." 396 F.3d at 305. In that case, there were two objections out of 300,-000 class members. *Id.* In this case, however, there is one objection out of only 488 class members. On a percentage basis, this equates to 0.20 percent. Whereas in *Rite Aid*, the percentage was much lower—0.00067 percent. Nonetheless, with only one objection, this factor weighs in favor of finding the fee award reasonable.

### iii. The skill and efficiency of the attorneys involved

Plaintiffs' counsel's timesheets demonstrate that Egan Young devoted a total of 470 billed hours to this case and Galfand Berger devoted a total of 140 billed hours. Time Sheet, ECF No. 56. There is evidence of record that class counsel diligently pursued Plaintiffs' claims and actively participated in settlement negotiations both privately with Defendant's counsel and also in front of Judge Rueter. Therefore, to the extent that this factor can be considered given the sparse record to the contrary, it weighs in favor of finding the fee award reasonable.

### iv. The complexity and duration of the litigation

One of Plaintiffs' counsels declares that class counsel investigated this case for months, conducted many interviews of Defendant's employees, reviewed thousands of pages of documents, and had many conferences with Defendant's counsel. *See* Young Decl. ¶ 6. Therefore, Plaintiffs argue, this factor weighs in favor of finding the fees reasonable. This factor is neutral. As explained above, the Settlement Agreement occurred before the Court decided any disposi-

tive motions. Although there were six months of settlement negotiations, the complexities in this case do not appear out of the ordinary for any class action complaint. Accordingly, this factor is neutral when assessing the reasonableness the fee award.

### v. The risk of nonpayment

■ In this case, class counsel took the action on a contingent fee basis. As explained above, there appears to have been a risk in this case that Plaintiffs' claims would fail for at least a significant number of class Plaintiffs. It follows, therefore, that there was a risk of nonpayment under a contingency arrangement. Thus, this factor weighs in favor of finding the fee award reasonable.

### vi. The amount of time devoted to the case by plaintiffs' counsel

■ Plaintiffs' counsel billed a total of 610 hours—470 hours for Egan Young and 140 for Garland Berger—in this case. As all cases are unique, and with only one objection filed, this factor is difficult to consider. Yet, the time devoted to this case was significant. Accordingly, this factor weighs in favor of finding the award reasonable.

### vii. The awards in similar cases

■ Within the Third Circuit, courts have approved attorneys' fees ranging from 19 percent to 45 percent of the settlement fund as reasonable. *See Gen. Motors*, 55 F.3d at 822; *In re Schering-Plough Corp. Sec. Litig.*, No. 01–0829, 2009 WL 5218066, at *6 (D.N.J. Dec. 31, 2009). While Plaintiffs point to no similar cases factually, their attorneys' fees of 33 percent of the settlement fund fall within the range recognized in the Third Circuit as reasonable. Therefore, this factor weighs in favor of finding the fee award reasonable.

### viii. Lodestar check

■ In addition to considering the above factors as to reasonableness, the Court will perform a lodestar check. "The lodestar

award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Rite Aid*, 396 F.3d at 305–06. In this case, Plaintiffs' counsel Egan Young provides that it worked a total of 470 hours on this case. The attorneys' hourly rates were either $300 or $600 an hour, for an associate or partner, respectively. Thus, if counsel had billed at these hourly rates, the total legal fees would amount to $252,120. With respect to Egan Young's co-counsel, Galfand Berger, it billed 140 hours in this case. This amounted to $78,300. Accordingly, without any multiplier in this case, Plaintiffs' attorneys' fees under the Settlement Agreement are reasonable. The Court approves Plaintiffs' requested attorneys' fees.

Therefore, under the *Girsh* factors and relevant *Prudential* factor, the Settlement Agreement is fair, reasonable, and adequate.

### C. *Objection to the Settlement*

As stated above, there was one objection by letter to the settlement in this case.[9] Joseph P. McCool, Sr. objected to the settlement as not fair, reasonable, or adequate. He contends that the settlement amount was improper and does not fairly compensate class members. Moreover, the requested attorneys' fees are excessive and disproportionate to the pro rata share of the class fund distributed to Plaintiffs. Lastly, he argues that the release requires all class Plaintiffs not to disparage Sunoco and that this clause infringes his right to speak out against the company.

■ Mr. McCool appeared at the Court's hearing on Plaintiffs' Motion and expanded upon his objections. In particular, Mr. McCool explained that while he believed the actual dollar value of the settlement was fair,

---

9. At the hearing, Ms. Anne Minor, a named Plaintiff and authorized representative of the Philadelphia Local 10–1 (the "Union"), placed on the record that the Union, as a party to the collective bargaining agreement for the employees and members of the class, endorsed and approved the terms of the Settlement Agreement.

the formula used to distribute these funds to the individual Plaintiffs was done with a "broad brush." Mr. McCool explained that given the specific circumstances of workers at the Refinery, some Plaintiffs may be receiving a disproportionately high or low amount of money. The Court need not detail how this is so, because even taken as true, the Court approves the formula used to distribute the class funds in this case. While the formula in this case may not be the most exacting way to distribute the funds to class Plaintiffs, a more accurate formula would require significantly more resources. These additional resources would result in more fees and, accordingly, fewer funds available to distribute to class Plaintiffs. Thus, there are diminishing returns to class Plaintiffs for a more specific formula. In light of this, the Court finds the formula used in this case, while not perfect, adequate to fairly compensate class Plaintiffs.[10]

Mr. McCool also objects to a portion of the release class Plaintiffs must sign to take part in the settlement. In particular, the release provides that "you agree not to make any statement that contradicts the terms of the Settlement Agreement or which is disparaging or damaging to the business or goodwill of Sunoco." Claim Form 2, Pls.' Mot. for Preliminary Approval of Settlement Ex. 4. Mr. McCool takes specific issue with the restriction on statements that are "damaging to the business or goodwill of Sunoco." *Id.*

Mr. McCool's objection is well taken. With the disjunctive "or," there is no connection of disparaging remarks to terms of the Settlement Agreement. Moreover, it is unclear what recourse Defendant would have if a class Plaintiff breached this release. There appears to be nothing in the Settlement Agreement or Release entitling Defendant to any liquidated damages or fees from such a breach. Given that this settlement is subject to the Court's approval, the Court finds that the restriction on presumably any remarks "disparaging or damaging to the business or goodwill of Sunoco" is too broad. The Court will strike this restriction from the release.

Thus, the final sentence of the release shall now read: "Further you agree not to make any statement that contradicts the terms of the Settlement Agreement."

**D.** *Approval of Payment to Claims Administrator*

Plaintiffs also seek final approval of payment to the claims administrator Heffler, Radetich & Saitta of $25,000. Heffler was responsible for verifying class members' addresses, mailing the Notice to class members, collecting and approving the claim forms, responding to class member inquiries, distributing the payments provided for, reporting the taxes and withholdings pursuant to such payments, and performing other duties. The Court approves this fee as reasonable.

**E.** *Approval of Reversionary Interest Beneficiary*

Lastly, at oral argument, Plaintiffs indicated any residual or unclaimed funds from the settlement would revert to a mutually agreed upon beneficiary. Upon the Court's order, the parties informed the Court that the *cy pres* beneficiary in this case would be Philadelphia Area Project on Occupational Safety and Health ("PhilaPOSH"). PhilaPOSH is an organization comprised of unions, health, and legal professionals focused on health and safety concerns faced by workers and their unions. *See* PhilaPOSH Mission Statement, http://www.philaposh.org/mission_statement. htm (last visited June 25, 2012). Since its founding in 1975, PhilaPOSH's mission has been "the prevention of injury, disease and death on the job through information, education, technical assistance and political action." *Id.* After review of PhilaPOSH's background and mission statement, and upon agreement of the parties, the Court designates PhilaPOSH as the *cy pres* beneficiary in this case.

**IV. CONCLUSION**

For the reasons provided above, the Court will grant Plaintiffs' Motion Seeking Final

---

**10.** Mr. McCool also argued that the attorneys' fees in this case are excessive. For the reasons stated above, the Court finds this argument unavailing. *See supra* Part III.B.2.h.

Approval of a Class Action Settlement and Class Certification and approve the Settlement Agreement and requested attorneys' fees. An appropriate order will follow.

## ORDER

**AND NOW,** this **26th** day of **June, 2012,** upon consideration of Plaintiffs' Motion for Final Certification and Approval of Settlement and Attorneys' Fees (ECF No. 52) and for the reasons set forth in the Court's accompanying Memorandum Opinion, it is hereby **ORDERED** as follows:

1. For purposes of this Action, this Court has subject matter jurisdiction and, for purposes of the settlement only, this Court has personal jurisdiction over the Parties, including all members of the Settlement Class.

2. The Court finds that the distribution of the Revised Notice of Pendency of Class Action, Settlement, Hearing Date for Court Approval and Claims Procedure, as provided for in the Order Granting Preliminary Approval of the Settlement, ECF Nos. 43, 44, constituted the best notice practicable under the circumstances to the Settlement Class and constituted due and sufficient notice to all persons entitled thereto.

3. For purposes of this settlement only, this Court certifies the following Settlement Class: "All current and former operations and laboratory employees employed by Defendant at its Philadelphia Refinery at any time from February 24, 2007 through the present." Joint Stipulation of Settlement and Release ¶ 3, Pls.' Mot. for Preliminary Approval of Settlement Ex. 1, ECF No. 39–1. The Settlement Class is certified pursuant to Federal Rule of Civil Procedure 23(b)(3).

4. This Court finds, solely for purposes of this settlement, that the Action may be maintained as a class action on behalf of the Settlement Class because: (a) the Settlement Class is so numerous that joinder of all members of the Settlement Class in the Action is impracticable; (b) there are questions of law and fact common to the members of the Settlement Class that predominate over any individual questions; (c) Plaintiffs' claims are typical of the claims of the Settlement Class; (d) Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5. This Court approves the Settlement Agreement as being fair, reasonable, and adequate.

It is hereby further **ORDERED** that Plaintiffs' Motion for Final Approval of Class Action Settlement and for Attorneys' Fees (ECF No. 52) is **GRANTED in part and DENIED in part** as follows: (1) the final sentence of the Release class Plaintiffs signed, *see* Claim Form 2, Pls.' Mot. for Preliminary Approval of Settlement Ex. 4, ECF No. 39, shall read: "Further you agree not to make any statement that contradicts the terms of the Settlement Agreement." (2) Plaintiffs' motion is otherwise **GRANTED** and the Court **APPROVES** the proposed Settlement Agreement (attached hereto as Exhibit A).

It is hereby further **ORDERED** that Philadelphia Area Project on Occupational Safety and Health is **DESIGNATED** the *cy pres* beneficiary to any reversionary interest from the settlement fund.

It is hereby further **ORDERED** that the case is **DISMISSED with prejudice.** The Court shall retain jurisdiction to implement the terms of the settlement agreement. The Clerk of Court shall mark the case **CLOSED.**

**AND IT IS SO ORDERED.**

### EXHIBIT A

### JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release ("Settlement Agreement") is made and entered into by and between the following: Plaintiffs, Matthew Ripley, James P. Savage, Jr., Gabriel Swartz, Michael Olsen, Anne Minor, Joseph M. Gross and Richard J. Sim, individually and on behalf of all others similarly situated (collectively, "Plaintiffs") and Defendant Sunoco, Inc. (R & M) ("Defendant" or "Sunoco"). This Settlement

Agreement is subject to the terms and conditions hereof and to the approval of the Court.

## DEFINITIONS

1. The Plaintiffs and Defendant herein are collectively referred to as "the Parties." "Class Counsel" is Egan Young and Galfand Berger, LLP.

## BACKGROUND

2. On February 24, 2010, Plaintiffs filed a proposed Class Action Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania. Plaintiffs filed suit on behalf of themselves and other similarly situated current and former operations and maintenance workers employed by Sunoco at its refinery located at 3144 West Passyunk Avenue, Philadelphia, Pennsylvania (the "Philadelphia Refinery"). The Complaint alleged that Sunoco and two individual defendants had failed to pay Plaintiffs wages and overtime for all required work time, including but not limited to, time spent clearing a security checkpoint at the beginning of each work shift, engaged off-site and off-the-clock while "on call", donning and doffing personal protective equipment, obtaining and storing work tools, traveling to and from assigned work sites, preparing and cleaning work equipment, and engaged in required shift change briefings with co-workers. The Complaint was removed to the United States District Court for the Eastern District of Pennsylvania. Thereafter, Plaintiffs stipulated to dismiss claims against the two individual defendants. Plaintiffs also dismissed all claims on behalf of the maintenance workers at the Philadelphia Refinery with prejudice. Defendant denied liability and asserted numerous defenses to class certification and on the merits. Following pre-class certification discovery, the Parties commenced arms-length settlement negotiations in which the Parties were each represented by competent counsel. The Parties participated in extensive direct settlement negotiations as well as two settlement conferences presided over by United States Chief Magistrate Judge Thomas Rueter, Having each fully considered the costs and risks associated with continued litigation of this action, Plaintiffs and Defendant enter into this Settlement Agreement for the purposes of resolving all claims in the Complaint as amended.

## SETTLEMENT CLASS

3. For purposes of this Settlement Agreement, the "Settlement Class" or "Class Members" consists of all current and former operations and laboratory employees employed by Defendant at its Philadelphia Refinery at any time from February 24, 2007 through the present.

## NON–ADMISSION OF LIABILITY

4. By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement and all exhibits thereto are settlement documents and shall be inadmissible in evidence in any proceed-

ing, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

### SCOPE OF SETTLEMENT

5. It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims that have been brought in the action or that reasonably arise out of the facts alleged in the action which exist between them.

6. It is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release, which release includes in its effect Sunoco, Inc. (R & M), its parent, subsidiaries, affiliates and all other related entities; its and their predecessors, successors and assigns; the past, present, and future officers, directors, shareholders, trustees, members, employees, attorneys and agents of any of the previously listed entities; any benefits plan maintained by any of the previously listed entities at any time; and the past, present and future sponsors, insurers, trustees, fiduciaries, and administrators of such benefit plans.

### FAIRNESS

7. Class Counsel have conducted a thorough investigation into the facts of the action, including an extensive review of voluminous documents, written discovery, and have diligently pursued an investigation of Class Members' claims against Defendant. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and potential appellate issues. Defendant and Defendant's counsel also agree that the settlement is fair and in the best interest of the Settlement Class.

### MUTUAL COOPERATION

8. Subject to certain provisions herein, the Parties agree to cooperate and take all steps necessary and appropriate to dismiss the action with prejudice upon complete performance of the terms and conditions of the settlement.

### TOTAL CONSIDERATION

9. The total payments under this Settlement Agreement shall be $675,000, inclusive of attorneys' fees and costs (including administration costs), subject to the provisions contained herein regarding reversion and distribution of funds. The sum of $675,000 shall be referred to herein as the "Settlement Fund."

### ATTORNEYS FEES AND COSTS

10. Class Counsel will apply to the Court for an award of attorneys' fees in the amount of $222,750.00—or thirty-three (33%) of the total amount of the Settlement Fund. Class Counsel will also seek from the Court an award of reasonable litigation costs, including administration costs, out of the Settlement Fund. Defendant does not contest Class Counsel's application for attorneys' fees.

### NO EXTRA PAYMENT

11. At no time will Defendant be responsible for payment of any monies in excess of the Settlement Fund.

### TERMS OF SETTLEMENT

12. NOW, THEREFORE, in consideration of the mutual covenants, promises, and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

(a) It is agreed by and among the Parties that the action and any claims, damages, or causes of action arising out of the dispute which is the subject of the action, or that reasonably arise out of the facts alleged in the action, be settled and compromised as between the Settlement Class and Defendant, subject to the terms and conditions set forth in this Settlement Agreement and the approval of the Court.

(b) *Right to Revoke.* Defendant retains the right to void this Settlement Agreement if greater than five percent (5%) of the Settlement Class identified in paragraph 3 of the Settlement Agreement rejects the settlement and/or dismissal of the claims.

(c) *"Effective Date of Settlement."* The settlement embodied in this Settlement Agreement shall become effective on the later of: (i) the Court's final approval of this settlement if no objections by Class Members have been filed and not withdrawn; (ii) the time for appeal has expired if an objection has been filed and not withdrawn, or (iii) the final resolution of any appeal of objections if an appeal has been filed and not dismissed.

(d) *Settlement Amount.*

(i) In consideration for settlement and a release of all claims of the Settlement Class against Defendant, Defendant agrees to pay, through payments from the Net Settlement Fund, to each Class Member who was employed by Defendant as an operations or laboratory employee at any time during the relevant Class Period, and who submits a valid and timely Claim Form a payment based on the following settlement formula: Each Class Member will be compensated on a pro rata basis for each Qualifying Calendar Quarter worked during the class period ("Qualifying Quarter"). A Qualifying Quarter is each three (3) month period during which an eligible employee worked (time when the employee was present and paid according to Sunoco payroll records) for at least 8 weeks. The individual settlement amount shall be calculated as a share of the Net Settlement Fund based upon the total number of Calendar Quarters worked by the Class. All Claim Forms must be signed, completed in their entirety, and timely mailed to be considered valid. The "Net Settlement Fund" is the balance of the Settlement Fund after deducting: (1) the payments made from the Settlement Fund for attorneys' fees and costs, including administration costs, and (2) a contingency fund of 25,000.00 to be administered by Class Counsel for use in addressing any late or disputed claims by Class Members or unanticipated costs of concluding this settlement (the "Contingency Fund").

(ii) Class Counsel will apply to the Court for, and Defendant will not oppose, an award of attorneys' fees in the amount of $222,750.00 of the total Settlement Fund to be paid out of the Settlement Fund. Class Counsel will also seek reimbursement of reasonable litigation costs, including its costs for administration of this settlement ("Administration Costs"), to be paid out of the Settlement Fund. Plaintiffs expressly waive and release any claim to any attorneys fees, costs and expenses against Defendant.

(iii) For purposes of payment of the settlement amount, Defendant will issue two settlement checks to each Class Member. All Settlement payments to the Class Members shall be allocated as follows: $500 per employee shall be allocated to the payment of liquidated damages. The remainder shall be allocated as payment of wages.

(e) Defendant shall pay, separate and apart from the Settlement Fund, the employer portion of statutory payroll taxes. The Parties agree that the portion of payments to Class Members allocated to liquidated damages shall not be treated as wages and shall not be subject to withholding taxes. Defendant shall provide each Settlement Class Member receiving a payment from the Settlement Fund with a Form W–2 and Form 1099 as required by law consistent with the allocation set forth in paragraph 12(d)(iii)above. Payments made under this Settlement Agreement will not be included in a Settlement Class Member's compensation for purposes of calculating the benefits to which they are entitled under any employee benefit program.

(f) Defendant shall mail payments to Settlement Class Members by the later of: (1) ten (10) business days of Defendant's receipt from Class Counsel of an electronic version of an Excel Spreadsheet reflecting the gross amount of the settlement payments for each Class Member pursuant to paragraph 12(d) above, or (2) within ten (10) business days of the Effective Date of Settlement.

(g) Defendant shall wire transfer or deliver to Class Counsel payment of the attorney

fees and costs within ten (10) business days of the Effective Date of Settlement.

(h) Qualified claimants will be only those individuals of the Settlement Class who submit a claim form that is signed and postmarked in a timely manner. For each Class Member submitting a claim, the Class Member's estimated share of the Net Settlement Fund will be reflected on the Claim Form. Qualified claimants may challenge the information on their Claim Form by making a challenge to Class Counsel, acting as the settlement administrator, within the time period provided for submitting the Claim Form, which challenge will be resolved without hearing by Class Counsel, who will make a final and binding determination without right to appeal.

(i) Any scheduled payments due to Class Members who opt-out of the settlement or who do not submit timely Claims Forms will be paid to a mutually agreed upon Cy Pres beneficiary.

## SETTLEMENT CLAIM FORM REVIEW BY ADMINISTRATOR

13. The Parties have agreed that Class Counsel will perform the duties of a Settlement Administrator for the purpose of issuing Claim Forms, independently reviewing the Claim Forms, documentation associated with computation of Class Members' estimated shares of the Settlement Fund, and verifying any amounts due to qualified claimants as set forth in this Settlement Agreement. At the same time, the parties agree that Class Counsel may engage a Settlement Claims Administrator to assist in the facilitation of the settlement process as set forth herein. Class Counsel shall report, in summary or narrative form, the substance of its findings. All disputes relating to Class Counsel's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations contemplated by the Settlement Agreement have been fully carried out.

## NOTICE TO THE PLAINTIFF CLASS

14. A Notice of Pendency of Class Action Settlement, Hearing Date for Court Approval and Claims Procedure ("Notice") in the form attached hereto as *Exhibit A* and approved by the Court shall be sent by Class Counsel to the Settlement Class, by first class mail, within fourteen (14) calendar days of entry of the Court's Order granting preliminary approval of the settlement and notice. Attached to the Notice will be a Claim Form ("Claim Form"), in the form attached hereto as *Exhibit B*. Any returned envelopes from this mailing with forwarding addresses will be utilized by Class Counsel to locate Class Members. Defendant agrees that it will take reasonable steps to access available personnel records and/or files to assist Class Counsel in locating any Class Members who do not respond to the mailed Court Notice to ensure maximum participation in the settlement by Class Members.

(a) Class Counsel shall use the information in its files and information provided by Defendant to compile a database of all Settlement Class Members, including last known address and telephone number, and estimated time worked in a operations or lab position, as the case may be, for purposes of providing Notice and calculating the individual settlement payments. Defendant agrees to provide Class Counsel with any information available in its files necessary to supplement the database within five (5) business days of a written request by Class Counsel.

(b) Class Counsel will perform and/or direct and oversee a designated settlement claims administrator to do an address updating check prior to mailing and will use skip tracing or other appropriate steps to ensure that the Notice and Claim Form is sent to all Class Members.

(c) Class Counsel shall act diligently and take appropriate and reasonable steps to assist Class Members in making claims hereunder.

## CLAIM PROCESS

15. Upon approval by the Court of the Claim Form attached hereto as *Exhibit B*. the Claim Form shall be mailed to all Class

Members along with the Notice described above.

16. Class Counsel shall compute an allocation of settlement amounts from the Net Settlement Fund for all Class Members in this action, as identified herein. In connection with sending the Settlement Notice and Claim Forms, members will be advised that the preliminary allocation is subject to adjustment based on any errors discovered in the claims process. Class Members may provide the Settlement Administrator with additional documentation consisting of Defendant's records, such as payroll documents, as provided in Paragraph 12(h) above.

17. No Claim Forms will be honored if postmarked more than forty-five (45) days after the date mailed to Class Members, except that additional time may be provided to a claimant for good cause and within an amount of time determined by the Class Counsel not to exceed fifteen (15) days.

18. Class Members will have forty-five (45) days from mailing of the Settlement Notice to object to or opt out of the settlement as outlined in Sections VI and VII of the Notice of Pendency of Class Action form. During that time period, Class Counsel may contact Class Members as often as appropriate in order to obtain the executed Claim Forms in a timely manner and increase participation in the settlement.

19. All original Claim Forms shall be sent directly to Class Counsel at the address indicated on the Claim Form. Class Counsel shall review the Claim Forms and make any calculations of payments to be distributed as described above by reviewing the Claim Forms and documentation and calculating such claiming Class Members' shares. Class Counsel will notify Defendant's counsel what claims were timely filed.

20. In the event a Claim Form is submitted timely but is deficient in one or more aspects, Class Counsel shall return the Claim Form to the claimant with a letter explaining the deficiencies and that the claimant shall have fourteen (14) days from the date of the deficiency notice to correct the deficiencies and resubmit the Claim Form. The envelope containing the resubmitted Claim Form must be postmarked within fourteen (14) days of the date of the deficiency notice to be considered timely unless there is a showing of good cause of additional time. No claimant will be provided a second notice of deficiency, except upon a showing of good cause.

21. Upon receipt of all Claim Forms and resolution of any challenges of the allocations of settlement amounts, Class Counsel shall prepare and provide to Defendant a final allocation of the Net Settlement Fund payments to each of the Class Members. Any settlement allocated to Class Members who opt-out of the settlement or who do not timely return Claim Forms will be paid to a mutually agreed-upon Cy Pres beneficiary This information shall be provided to Defendant's counsel in an Excel spreadsheet. At the same time, Class Counsel shall also provide Defendant with the amounts of attorneys' fees, costs, and Administration Costs, Contingency Fund. Defendant is responsible for issuing the payments and issuing the Form W–2 and Form 1099 and any other required state and federal tax forms as set forth in Paragraph 12(e) above. Defendant will file a declaration of payment with the Court and provide a copy to Class Counsel.

22. Defendant agrees that it will issue from the Settlement Fund the settlement checks to the Class Members and wire transfer or deliver to Class Counsel the attorneys fees and costs, including Administration Costs and the Contingency Fund, within the time frames provided in paragraphs 12(f) and 12(g) above. If there is any appeal of the District Court's Order approving the settlement of the action, Defendant agrees to put the Settlement Fund into an interest bearing escrow account acceptable to both Class Counsel and Defendant, which funds shall be held in trust for the Settlement. When the District Court's Order thereafter becomes final, the principal and interest will be released to Defendant for distribution to the Class Members and the named Plaintiffs, less the amount awarded to Class Counsel as reasonable attorneys' fees and costs, including Administration Costs, which will be released to Class Counsel as payment therefor. Accrued interest will be credited *pro rata* to

the Net Settlement Fund, payments to named Plaintiffs, Class Counsel's reasonable attorneys' fees and costs awarded, including Administration Costs, in the amounts approved by the District Court. If the District Court's Order is reversed on appeal and this settlement not approved and one or both of the Parties exercises its option to void the Settlement Agreement pursuant to Paragraphs 29–31 below, the full amount of the Settlement Fund plus any interest actually earned will be returned to Defendant.

23. Claimants shall have ninety (90) calendar days after mailing by Defendant to cash their settlement checks. If any claimants do not cash their checks within that 90–day period, their check will be void and a stop-pay will be placed. In such event, those claimants will be deemed to have waived irrevocably any right in or claim to a settlement share, but the Settlement Agreement will nonetheless be binding upon them.

24. Should there remain any residual from the Settlement Fund after all payments are made under this Settlement Agreement, for example, if claimants do not cash their settlement checks within ninety (90) calendar days after mailing or if the Contingency Fund is not exhausted, the parties agree that any such residential funds shall be paid to a mutually agreed Cy Pres beneficiary. Any costs associated with administering the residual (*e.g.*, bank stop pay charges) will be deducted from the residual before donation to the *Cy Pres* beneficiary.

### RELEASE BY THE CLASS

25. By operation of the entry of the Judgment and Final Approval, and except as such rights or claims as may be created by this Agreement, Plaintiffs and each Individual Class Member who does not timely opt out of the settlement forever and fully release Sunoco, Inc. (R & M), its parent, subsidiaries, affiliates and all other related entities; its and their predecessors, successors and assigns; the past, present, and future officers, directors, shareholders, trustees, members, employees, attorneys and agents of any of the previously listed entities; any benefits plan maintained by any of the previously listed entities at any time; and the past, present and future sponsors, insurers, trustees, fiduciaries, and administrators of such benefit plans from any and all past and present matters, claims, demands, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which an such Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon or arise out of the facts, acts, transactions, occurrences, events or omissions alleged in this Litigation and that arose during any time that such Class Member worked for Sunoco as an operations or laboratory employee from February 24, 2007 through the Effective Date ("Released Claims"). The Released Claims include without limitation claims asserted in this Litigation and any other claims based on failure to pay wages and overtime for all required work time, including but not limited to, time spent clearing a security checkpoint at the beginning of each work shift, engaged off site and off-the-clock while "on call", donning and doffing personal protective equipment, obtaining and storing work tools, traveling to and from assigned work sites (including walking or riding from the locker rooms to the control rooms), preparing and cleaning work equipment and engaging in required shift change briefings with co-workers, or failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, the common law of Pennsylvania, and the statutes and regulations of all other states relating to the foregoing.

### DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

26. The Parties shall stipulate to the amendment of the Complaint to include a claim for violation of the Fair Labor Standards Act.

27. The Parties shall submit this Settlement Agreement to the United States Dis-

**324**

trict Court for the Eastern District of Pennsylvania, in support of Plaintiffs' Motion for Preliminary Approval and determination by the Court as to its fairness, adequacy, and reasonableness. Promptly upon execution of this Settlement Agreement, the Parties shall apply to the Court for the entry of a preliminary order substantially in the following form:

(a) Scheduling a fairness hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable, and adequate as to the Members of the Class;

(b) Approving as to form and content the proposed Notice of Pendency of Class Action and Proposed Settlement;

(c) Approving as to form and content the proposed Claim Form and Claim Filing instructions;

(d) Directing the mailing of the Notice of Pendency of Class Action and Proposed Settlement and Claim Form by first-class mail to the Class Members;

(e) Preliminarily approving the settlement;

(f) Approving the appointment of Class Counsel's designed Settlement Claims Administrator and preliminarily approving costs of administration payable to the Settlement Administrator, estimated to be $25,000;

(g) Preliminarily approving Plaintiffs' application for payment of reasonable attorneys fees and costs as set forth herein; and

(h) Approving amendment of the Complaint to include a Fair Labor Standards Act claim.

## DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

28. Following final approval by the Court of the settlement provided for in this Settlement Agreement, Class Counsel will submit a proposed final order and judgment:

(a) Approving the settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(b) Approving Class Counsel's application for an award of attorneys' fees and reimbursement costs;

(c) Dismissing the action on the merits and with prejudice and permanently barring all Settlement Class Members from prosecuting against Defendant or its present and former parents, subsidiaries, general partners, limited partners, members, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, successors and assigns, any individual or Class claims which were asserted in or which reasonably arise out of the facts alleged in the Complaint, including without limitation any claims arising out of the acts, facts, transactions, occurrences, representations, or omissions set forth in the Complaint, upon satisfaction of all payments and obligations hereunder.

## VOIDING THE SETTLEMENT AGREEMENT

29. A failure of the Court to approve any material condition of this Settlement Agreement which effects a fundamental change of the parties' settlement shall render the entire Settlement Agreement voidable and unenforceable as to all of the Parties herein at the option of either party.

30. As a condition of the Settlement Agreement, the Company and the United Steelworkers International Union and the Philadelphia Local 10–1 (the "Union") shall enter into a Memorandum of Agreement Regarding Wage and Hour Practices attached as *Exhibit C* hereto. Failure of the Union to sign this Memorandum of Agreement shall void this Settlement Agreement in its entirety.

31. Defendant also retains the right to void this Settlement Agreement in its entirety if greater than five percent (5%) of the Settlement Class reject the settlement and/or dismissal of the claims.

## PARTIES' AUTHORITY

32. The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## MUTUAL FULL COOPERATION

33. The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Settlement Agreement. The Parties to this Settlement Agreement shall use their best efforts including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's final approval of this Settlement Agreement.

## ENFORCEMENT ACTIONS

34. In the event that one or more of the Parties to this Settlement Agreement institutes any legal actions or proceedings to enforce or implement the provisions of this Settlement Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties' reasonable attorney fees and costs, including expert witness fees incurred in connection therewith.

## NOTICES

35. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, or overnight carrier, return receipt requested, addressed as follows;

To Plaintiff Class: Eric L. Young, Esquire

Egan Young, Attorneys–at–Law

526 Township Line Road, Suite 100

Blue Bell, PA 19422

To Defendant: Robert M. Goldich, Esquire

Greenberg Traurig, LLP

2700 Two Commerce Square

2001 Market Street

Philadelphia, PA 19103

## CONSTRUCTION

36. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his or her or its counsel participated in the draft of this Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

37. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provisions hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

38. This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

39. This Settlement Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

## NO PRIOR ASSIGNMENTS

40. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or

encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## CLASS COUNSEL SIGNATORIES

41. It is agreed that because the Class Members are so numerous, it is impossible or impractical to have each Class Member execute this Settlement Agreement. The Notice of Pendency of Class Action and Proposed Settlement, *Exhibit A* hereto, will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Class Member.

## NO PUBLICITY

42. Class Counsel agrees not to issue any press release or to seek any publicity regarding this settlement that makes any statement that contradicts any of the terms of this Agreement or which is disparaging or damaging to the business organization, goodwill or reputation of Defendant.

## COUNTERPARTS

43. This Settlement Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute on Settlement Agreement, which shall be binding upon and effective as to all of the Parties.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

**SUNOCO, INC. (R & M)**

By: ———

Name: ———

Title: ———

By: ———

Name: *Robert M. Goldich, Esquire*

Title: *Counsel for Sunoco, Inc.*

**UNITED STEEL WORKERS INTERNATIONAL UNION and its PHILADELPHIA LOCAL 10–1**

By: ———

Name: *JAMES P. SAVAGE JR.*

Title: *PRESIDENT USW LOCAL 10–1*

By: ———

Name: *Eric L. Young, Esquire*

Title: *Counsel for Plaintiffs*

By: ———

Name: *Michael McGurrin, Esquire*

Title: *Counsel for Plaintiffs*